**Lara ANTKOWIAK, by her parent and natural guardian, John M. ANTKOWIAK, Plaintiff,**

**v.**

**Gordon M. AMBACH, as Commissioner of the New York State Education Department, Defendant.**

**No. Civ.–85–532C.**

United States District Court, W.D. New York.

Nov. 4, 1985.

———

Neighborhood Legal Services, P.C. (James R. Sheldon, Jr., of counsel), Bouvier, O'Connor, Cegielski & Levine (Bruce A. Goldstein, of counsel), State University of New York at Buffalo Legal Assistance Program (Ronald M. Hager, of counsel), Buffalo, New York, for plaintiff.

Robert Abrams, Atty. Gen. of the State of N.Y. (Peter B. Sullivan, Asst. N.Y. State

Atty. Gen., of counsel), Buffalo, New York, for defendant.

CURTIN, Chief Judge.

Pending before the court is defendant's motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure and plaintiff's motion for a preliminary injunction. Plaintiff asserts claims under the Education of the Handicapped Act, 20 U.S.C. § 1400 et seq.; the Rehabilitation Act of 1973, 29 U.S.C. § 794; and 42 U.S.C. § 1983 for violations of the due process and equal protection guarantees of the Fourteenth Amendment. The court has considered the briefs and affidavits and, on October 31, 1985, heard oral arguments from counsel.

The essential facts in this matter are not in serious dispute and may be summarized briefly.

Plaintiff John M. Antkowiak is the father of Lara Antkowiak. He alleges that she has been deprived of an appropriate public education under the Education of the Handicapped Act. Plaintiff seeks an order directing that she be placed at the Hedges Treatment Center of the Devereux Foundation in Malvern, Pennsylvania [Hedges], and directing defendant to reimburse him for expenses incurred in making this placement at his own expense. Defendant urges that the complaint should be dismissed because plaintiff has failed to exhaust administrative remedies.

Lara Antkowiak is now 12 years of age and is diagnosed as having anorexia nervosa and various emotional problems. In June of 1983, Lara's parents noticed that she seemed to withdraw from her friends and spent much of her time in her room. She did not seem to be growing. A pediatrician determined that her weight had remained constant for one year, from the end of the third grade until the end of the fourth grade. Throughout the summer of 1983, Lara lost weight. She was diagnosed as suffering from anorexia nervosa and was put on a special diet to gain one pound per week. When the diet failed and Lara continued to lose weight, her parents resorted to force-feeding her.

During 1983 and 1984, Lara was admitted three times to Strong Memorial Hospital in Rochester, New York [Strong], for treatment. Her latest stay in the hospital lasted from May 2, 1984, until May 15, 1985. After being in the psychiatric unit for a few months, she was placed in the adolescent unit in the hospital. During her hospital stay, attempts were made to have her receive individual tutoring. Finally, the hospital notified Lara's parents that since she no longer needed acute medical care which was provided at Strong Memorial Hospital, she had to leave the hospital no later than April 24, 1985.

In the meantime, application had been made to the Buffalo City School District Committee on the Handicapped [COH] for assistance in obtaining a residential educational placement for Lara upon her discharge from Strong. On February 27, 1985, the COH determined that Lara suffered from an educational handicap and prepared a Phase 1 Individualized Educational Program [IEP]. Applications were made to six residential programs in New York State, and all stated that they could not accept her.

On March 21, 1985, the COH submitted to the State Educational Department [SED] an application for approval by the Commissioner to contract with Hedges. This facility had been used before by the SED for out-of-state placement, but on April 17, 1985, the SED notified the COH that there was a hold on new admissions, so Lara's admission could not be approved.

In the April 17, 1985, letter from the SED to the COH, the SED recommended that COH contact three additional in-state programs as potential placements for Lara. The applications were made, and rejections were received from each. The application to the Anderson School was rejected on April 29, 1985, the application to the Convalescent Hospital for Children on May 15, 1985, and the application to the Rhinebeck Country School on April 30, 1985.

Because of the notice from Strong that Lara had to leave the hospital by April 24, 1985, this suit was instituted and, as originally filed, included Strong Memorial Hospital as a defendant. After the suit was filed, Lara's father, at the suggestion of the SED, visited two other facilities, but both determined that they could not meet her needs and could not accept her placement. Because she was not placed at any public or private facility and the hospital insisted that it could not care for her anymore, John Antkowiak made his own arrangement to have his daughter placed at Hedges on May 16, 1985.

Apparently, the SED is allowing the other New York State handicapped students who are currently residents at Hedges to remain there throughout the remainder of the 1984–85 school year and for the 1985–86 school year if alternative educational placements cannot be secured. This continuance of current placements was approved in spite of the fact that on May 9, 1985, Hedges was informed that it was removed from the list of approved schools. Lara's educational program at the Devereux Day School is unapproved and has never sought approval.

Since the institution of this action, there has been communication and correspondence between plaintiff, plaintiff's counsel, and the SED, but there have been no further recommendations made by the COH as to the placement of Lara. Plaintiff alleges that procedures provided by New York State education laws are inadequate and he had no alternative but to come to court.

*Exhaustion of State Remedies*

Under the administrative process established by the State of New York, parents have the right to appeal a recommendation by the local COH to the Board of Education, which then appoints an impartial hearing officer. The determination of the Board of Education after a hearing may be appealed to the Commissioner of Education. New York State Education Law § 4404(1). If dissatisfied by the decision of the Commissioner, the parents may then seek judicial review.

Pursuant to the Education of the Handicapped Act, the state administrative remedies must be exhausted before a plaintiff turns to federal or state court. 20 U.S.C. § 1415(e)(2). The exhaustion requirement has been strictly enforced by the courts of this circuit. *See Riley v. Ambach*, 668 F.2d 635 (2d Cir.1981). Plaintiff claims that exhaustion is not required in this case. He urges that, since he agreed with the recommendation of the COH that Hedges was the only appropriate facility found for Lara, there was no dispute to take to a hearing. According to plaintiff, he was without any administrative remedy under New York law.

Pursuant to New York State Education Law § 4404(1):

If the recommendation of the committee on the handicapped is not acceptable to the parents or guardians of a child, or if the committee fails to make a recommendation within such period as may be required by regulations of the commissioner, such parents shall notify the board of education of this situation and the board shall appoint an impartial hearing officer to hear the appeal and make a recommendation to the board of education within such period of time as the commissioner by regulation shall determine. A record of proceedings before the hearing officer shall be maintained and made available to the parties. An appeal to the commissioner of education will lie from any determination of the board of education.

Honorable John T. Elfvin of this court addressed a similar claim in *Smith v. Ambach*, CIV–80–1086E (August 21, 1981). There, plaintiffs urged that the administrative process established by the State education laws is not applicable when parents and the COH agree on a placement. In the *Smith* case, the recommendation of the COH that the child be placed in a particular program was rejected by the local school board because the Commissioner had prohibited new enrollment in that program during the academic year. The court noted that a hearing is available when parents

are dissatisfied with the COH recommendation, adding: "A fair reading of § 4404(1) suggests that a hearing is also available if parents are aggrieved by a decision of the Board of Education to reject a recommendation made by the COH." *Id.* at 7–8.

The facts of this case are virtually indistinguishable from those in *Shannon v. Ambach*, CIV–81–0460, decided September 17, 1981, by Honorable George C. Pratt. The court found:

On the papers before the court it appears that when the Bay Shore school district reported to plaintiffs that the State Education Department had denied the request of Bay Shore's committee on the handicapped to approve placement of Karilee at the New Interdisciplinary School for the 1979–80 school year, plaintiffs dropped the matter at that point and placed Karilee at the New Interdisciplinary School at their own expense. Plaintiffs did not request the committee on the handicapped to make a formal placement of Karilee from which they could have appealed through the statutory review process. In effect, plaintiffs are complaining that the commissioner has denied a request made by the committee on the handicapped; but plaintiffs did not pursue the matter to a decision even by the committee on the handicapped, let alone by the impartial hearing officer or the Commissioner of Education himself.

Plaintiffs in that case were found not to have exhausted their administrative remedies.

Plaintiff attempts to distinguish *Shannon*, apparently based on the number of alternatives explored by the COH before Mr. Antowiak enrolled Lara at Hedges on May 16, 1985. But, as in *Shannon*, plaintiff failed to pursue the matter to decision by the COH before turning to the courts. The SED notified the local COH that Hedges was not approved for new admissions on April 17, 1985. Six days later, plaintiff filed suit in this court.

At the time this suit was filed, plaintiff did not yet know that the three alternative schools explored by the COH at the sug-gestion of the State Education Department had rejected Lara. Even if he had this knowledge, however, plaintiff should have returned to the COH and requested an alternative recommendation. If the COH had said that it had no other recommendation, plaintiff could have sought a hearing pursuant to New York State Education Law § 4404(1). Under the Education of the Handicapped Act, it is the duty of the State to find appropriate placement for Lara. The court is aware that plaintiff believed he was forced to file suit in late April because Strong Memorial Hospital of Rochester, originally a defendant in this action, was threatening to release Lara. However, that issue could have been addressed in court while plaintiff simultaneously pursued his administrative remedies. Plaintiff has failed to exhaust his administrative remedies as required by the Act.

Plaintiff urges that he is not required to exhaust, because in this case, exhaustion would be futile. *Riley*, 668 F.2d at 640–41. Plaintiff claims the Commissioner has essentially predetermined Lara's case. A similar argument was advanced by the plaintiffs in *Riley*. In that case, 18 children with learning disabilities challenged the Commissioner's determination that such children needed to be diagnosed at a certain level of impairment before they could be deemed handicapped. They also challenged his decision barring residential placement to children who suffered solely from learning disabilities. The court noted that, while exhaustion might appear futile because the Commissioner had already decided against residential placement for a certain class of students, he might reverse himself in a "compelling case." *Riley*, 668 F.2d at 642.

Plaintiff seeks to distinguish this case from *Riley* by pointing out that here, the State Education Department was aware of the facts of Lara's case and declined to approve placement at Hedges with her individual situation in mind. However, the Buffalo COH was instructed to explore the possibility of placing Lara at other schools

based on the currently unapproved status of Hedges. Hannah Flegenheimer, Director of Program Monitoring for the Office of Education of Children with Handicapping Conditions, stated that Hedges is, among other things, not sufficiently supervised. Many New York students who have attended Hedges have been returned to New York under emergency conditions (Flegenheimer affidavit).

No formal decision on Lara's case has been made. It appears that the SED was provided with information concerning Lara's condition, but there is no evidence that this information was considered or relied upon by the SED in rejecting the COH's initial recommendation. In light of the fact that nine State schools were unable to take Lara, this may well be the compelling case in which the Commissioner reverses himself and permits Lara to enroll in an unapproved school. The issue has not been predetermined.

After the case has been reviewed by the Commissioner, he may find an acceptable school, either in state or out of state, to suit both Lara's needs and the guidelines of the State of New York. The administrative process could also shed light on whether Lara's problem is educational, medical, emotional, or a combination of all three. These issues must be addressed by the State Education Department.

*Injunctive Relief*

■ On the papers before the court, it appears that Lara Antkowiak suffers from a severe, life-threatening illness. Gunther Abraham, a clinical psychologist at Hedges, submitted an affidavit stating that Lara needs continued placement in an intensive 24-hour program if she is to make any progress (Abraham affidavit, ¶ 15). He believes that Lara has, after several months, begun to establish a trusting relationship with her therapist and is now working diligently in therapy. Dr. Abraham stated that any disruption would cause irreversible harm (Abraham affidavit, ¶ 16).

Dr. Elizabeth McAnarney, who was one of Lara's physicians at Strong Memorial Hospital, noted that any further loss of weight and physical deterioration could cause long-term damage. Lara is pre-pubescent and has not yet developed her full bone, metabolic, and organ growth (McAnarney affidavit, ¶ 26). Dr. McAnarney believed that returning to her home would put Lara in risk of weight loss (J. Antkowiak affidavit, ¶ 16). These are serious questions which must be faced in the context of this case.

In *Vander Malle v. Ambach*, 673 F.2d 49 (2d Cir.1982), the court held that exhaustion was not required, based on the limited relief sought. There, the parents sought a preliminary injunction requiring the State to pay for the interim maintenance of their son at an unapproved school pending the discovery of another placement which would satisfy the requirements of the Act. The injunction that issued in that case was of limited scope. It did not require continued placement at a particular institution pending litigation. The child was to be placed there only until an appropriate long-term placement was found. *Id.* at 51–52.

It is true, as defendant points out, that the relief sought by plaintiff in his amended complaint is much broader than the relief sought by plaintiffs in *Vander Malle*. However, during argument in open court, plaintiff revised his request for injunctive relief to be more in line with the relief approved by the *Vander Malle* court. He now indicates a willingness to proceed through the administrative process in search of alternative placement, but asks the court to issue a preliminary injunction ordering the State to assume Lara's maintenance costs until an appropriate alternative placement is found.

There is one other significant difference between this case and *Vander Malle*. In *Vander Malle*, the boy had been placed in his school by the State at a time when the school was approved. The court looked to 20 U.S.C. 1415(e)(3) to find support for the proposition that the State must maintain the child in his then current placement. The court went on to note, however, that: "We can agree with the State defendants that § 1415(e)(3) does not require a State to

undertake payments for continuation of a child's placement that had been selected unilaterally by the parents." *Id.* at 52. In this case, Lara was not placed at Hedges by the State.

Even if section 1415(e)(3) does not apply here, a preliminary injunction may still be appropriate. Under well known principles of law, a preliminary injunction shall issue if a plaintiff can show irreparable harm and either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly toward the party seeking preliminary relief. *Jackson Dairy Inc. v. H.P. Hood and Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979).

In this case, there must be an even greater burden on plaintiff, since he seeks more than mere maintenance of the status quo. If afforded the relief he now seeks under *Vander Malle,* he will, to some degree, have been granted affirmative relief.

The record before me is insufficient to demonstrate irreparable harm. Plaintiff is to submit a detailed affidavit from Mr. Antkowiak describing the current financial status of himself and his wife. He shall describe what steps, if any, he has taken to attempt to secure additional money to fund Lara's continued stay at Hedges. Plaintiff shall also submit affidavits from responsible personnel at Hedges explaining its general policy regarding patients without funds, its past practice, and what would happen to Lara if her parents stopped payments.

Additionally, plaintiff must show a probability of success on the issue as to whether the State has an interim obligation to fund Lara's stay at Hedges until alternate placement is made. Since plaintiff placed his daughter at Hedges, it appears that he cannot rely on 20 U.S.C. § 1415(e)(3) to demonstrate a duty on the part of the State to fund Lara's interim stay.

The SED claims that there is no obligation on the part of the State to fund Lara's stay, because the services sought by Lara are not educational, but medical and psychiatric, and so the State is not required to provide them. Under the Act, certain medical services are excluded from coverage. However, "related services" may be required to assist a handicapped child to benefit from special education. 20 U.S.C. § 1401[17], *Irving Independent School District v. Tatro,* —— U.S. ——, 104 S.Ct. 3371, 82 L.Ed.2d 664 (1984). Defendant urges that monitoring Lara's food intake need not be performed during school hours and so is not covered by the Act. There is a serious question as to whether Lara's problems are also educational in nature. If Lara's needs are not educational, the SED would have no obligation, even interim, to fund Lara's stay at the Hedges Treatment Center. Plaintiff must be prepared to demonstrate his likelihood of success on this issue.

The affidavits shall be filed on or before November 18, 1985. Any briefs or other information from both parties shall be filed on or before November 22, 1985. The parties shall meet with the court on November 25, 1985, at 2 p.m. to argue the merits of the application for preliminary injunction and to determine whether a hearing is necessary.

The decision on defendant's motion to dismiss for failure to exhaust is deferred pending further proceedings in accordance with this order. Plaintiffs shall immediately resume the State administrative process. The court urges that the Buffalo COH, the Board of Education, and the Commissioner to act expeditiously on plaintiff's application.

So ordered.