838 F.2d 635
 44 Ed. Law Rep. 129
 Lara ANTKOWIAK, by her parent and natural guardian John M.
ANTKOWIAK, Plaintiff-Appellee, Cross-Appellant,
v.
Gordon M. AMBACH, as Commissioner of the New York State
Education Department, Defendant-Appellant, Cross-Appellee.
 Nos. 132, 222, Dockets 87-7300, -7344.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 14, 1987.
Decided Jan. 27, 1988.
 
 Bruce A. Goldstein, Buffalo, N.Y. (Bouvier, O'Connor, Cegielski & Levine, James R. Sheldon, Jr., Neighborhood Legal Services, Inc., Ronald M. Hager, State University of N.Y. at Buffalo School of Law, Legal Assistance Program, Buffalo, N.Y., of counsel) for plaintiff-appellee, cross-appellant.
 Leslie Neustadt, Albany, N.Y. (Robert Abrams, Atty. Gen. of the State of N.Y., Albany, N.Y., of counsel) for defendant-appellant, cross-appellee.
 Elizabeth L. Schneider, Monroe County Legal Assistance Corp., Rochester, N.Y., filed a brief for amicus curiae Western New York Disability Law Coalition.
 Before CARDAMONE, WINTER and MINER, Circuit Judges.
 MINER, Circuit Judge:
 
 
 1
 John M. Antkowiak commenced an action on behalf of his daughter, plaintiff-appellee Lara Antkowiak, in the United States District Court for the Western District of New York (Curtin, C.J.) against defendant-appellant Gordon M. Ambach, as Commissioner of the New York State Education Department ("SED"). The complaint asserted claims under the Education of the Handicapped Act ("EHA" or "the Act"), 20 U.S.C. Sec. 1400 et seq. (1982); the Rehabilitation Act of 1973, 29 U.S.C. Sec. 794 (1982); and 42 U.S.C. Sec. 1983 (1982) for violation of plaintiff's rights under the EHA and fourteenth amendment due process and equal protection clauses. Plaintiff sought declaratory and injunctive relief to effect a state placement of Lara at an unapproved out-of-state facility and reimbursement from the state for her private placement there.
 
 
 2
 After a bench trial, the district court granted judgment pursuant to the EHA in favor of plaintiff. Defendant appeals from this judgment. We reverse.
 
 BACKGROUND
 
 3
 Since the age of ten, Lara Antkowiak has suffered from emotional disturbances and anorexia nervosa. She became anxious and upset about her schoolwork, although she was a bright child with an I.Q. of 143. Lara's schooling was disrupted by three lengthy stays at Strong Memorial Hospital ("Strong" or "the hospital") in Rochester between October 1983 and May 1985, necessitated by her condition. During this period, her ability to function educationally declined to the point that even efforts by the hospital's special education teacher to tutor her individually failed. Lara regularly refused to attend class. Even when she did, Lara stared out the window, was unresponsive, and occasionally became hostile.
 
 
 4
 In late 1984, Lara's parents, at the hospital staff's suggestion, applied to the Buffalo City School District Committee on the Handicapped ("COH") to arrange for an appropriate special education placement for Lara upon her discharge from Strong. After initially rejecting the application, the COH, upon further investigation, on February 27, 1985 found that Lara could not function in a regular classroom. Accordingly, the COH developed an individualized education plan ("IEP") for Lara and recommended placement for her at a residential educational facility. Rosalie Wiggle, coordinator of the COH, made six applications to in-state residential facilities, but each refused to accept Lara. The COH then applied to the Hedges Treatment Center ("Hedges") of the Devereux Foundation in Malvern, Pennsylvania, which accepted Lara. Therefore, on March 21, Ms. Wiggle applied to the SED for the Commissioner of Education's approval of a contract with Hedges.
 
 
 5
 Pursuant to an earlier telephone conversation, Edward McDonald, a regional associate of the SED in the Office for the Education of Children with Handicapping Conditions, notified Ms. Wiggle on April 17, 1985 that Lara's placement at Hedges would not be approved because the SED had imposed a moratorium on new admissions there. The regional associate recommended three approved in-state facilities, and Ms. Wiggle applied to them. Each declined to accept Lara.
 
 
 6
 While the COH was seeking a placement for Lara, Strong informed her parents that Lara no longer needed acute medical treatment and would be discharged by April 24. In response, on April 23 Dr. Antkowiak brought an action on behalf of his daughter in the Western District of New York, in which he sought an order forcing the SED to place Lara at Hedges and interim injunctive relief preventing Strong from discharging Lara until an alternative placement was found. Thereafter, Dr. Antkowiak visited two residential treatment facilities at the SED's suggestion, but each of them determined that they could not meet Lara's needs. Ms. Wiggle did not seek further recommendations from the regional associate after both the COH and the Antkowiaks had looked into those facilities suggested by the SED, because Dr. Antkowiak placed Lara in Hedges at his own expense on May 15, 1985. Lara received academic instruction in the Devereux Day School at Hedges. After Lara's placement, the complaint was amended, and Strong was dismissed as a defendant in the suit.
 
 
 7
 Plaintiff moved for a preliminary injunction to require the SED to approve Lara's placement. On November 4, 1985, the district court denied this motion. 621 F.Supp. 975 (W.D.N.Y.1985). Chief Judge Curtin found that Lara had not exhausted state administrative remedies first as the EHA requires, since the SED had made no formal adjudication of Lara's case in rejecting the COH's recommendation. Id. at 979. He ordered plaintiff to "immediately resume the [s]tate administrative process." Id. at 980.
 
 
 8
 The Antkowiaks thus sought a hearing through the board of education as required by law. See N.Y.Educ.Law Sec. 4404(1) (McKinney 1981). The school district and Lara's parents stipulated that Lara was emotionally disturbed and needed placement at Hedges. The hearing officer found Lara in need of a residential placement, agreed with the COH's recommendation and, on December 26, 1985, ordered Lara's placement at Hedges. On January 24, 1986, the SED advised the school district that the placement could not be approved. Although Hedges was by then once again on the SED's approved list, it was approved only for children at least 14 years old, and Lara was only 12. Further, the Devereux Day School at Hedges had never been approved by, or even sought approval from, the SED.
 
 
 9
 Plaintiff renewed the application for a preliminary injunction. The SED opposed the motion, contending that administrative remedies had not been exhausted through an appeal to the Commissioner. The district court found that neither the school board nor the Antkowiaks wanted to appeal the hearing officer's findings or decision, and thus neither was obligated to seek review by the Commissioner. See CIV-85532C, slip op. at 4, 7 (W.D.N.Y. Feb. 3, 1986) (decision and order). Chief Judge Curtin found that the Antkowiaks had satisfied EHA exhaustion requirements and ordered the Commissioner to show cause why the injunction should not issue. Id.
 
 
 10
 On February 11, 1986, the Commissioner issued an order to show cause why the hearing officer's decision should not be annulled. The district court deferred any further action pending the Commissioner's decision. CIV-85-532C, slip op. at 5 (W.D.N.Y. Feb. 27, 1987). On March 14, 1986, the Commissioner annulled the hearing officer's decision, finding that Lara had no "educationally handicapping condition" as defined in N.Y.Comp.Codes R. & Regs. tit. 8, Sec. 200.1(cc)(2), 638 F.Supp. at 1583 (Appendix 2) (Commissioner's Decision of March 14, 1986), because her medical condition was "clearly distinguishable from her educational needs," id. at 1584.
 
 
 11
 Plaintiff moved for summary judgment in the district court, contending that the hearing officer's decision was final under the EHA. Chief Judge Curtin agreed, and on July 11, 1986, granted partial summary judgment as to the issues whether Lara was handicapped, whether she needed special education and related services, and whether her IEP appropriately recognized that need. 638 F.Supp. 1564, 1570-72 (W.D.N.Y.1986). The court found that the Commissioner's annullment rested on improper grounds and thus did not consider his decision. Id. at 1570. Issues of the availability of alternative placements, and the nature, suitability and approval status of Hedges' services were set for trial. Id. at 1572.
 
 
 12
 Following a bench trial, Chief Judge Curtin found that no other placement was identified as appropriate for Lara despite the court's repeated requests for a recommendation from the SED. 653 F.Supp. 1405, 1412 (W.D.N.Y.1987). The court also found that Hedges "is a suitable placement for Lara and meets most, if not all, of her needs." Id. at 1413. The court dismissed the importance of Hedges' unapproved status. Chief Judge Curtin noted that Lara, who had turned 14 one week before the decision, was now within the SED's approved age range for Hedges, and that there was "no indication that Lara is not receiving all the benefits and rights at Hedges that she would receive at" an in-state school. Id. at 1415. The related services that Hedges provided to Lara were found "necessary to enable her to derive any benefit from" the instruction she was receiving. Id. at 1416. The court therefore ordered the state to effect immediately the Hedges placement at state expense, id. at 1417, and, finding that Congress implicitly abrogated the states' eleventh amendment immunity in enacting the EHA, ordered the state to retroactively reimburse Lara's tuition at Hedges during the period of her private placement, id. at 1419.
 
 
 13
 Lara left Hedges in June 1987. Her parents enrolled her in a private school in Buffalo that was not a part of her original, and only, IEP from the COH.[1]
 
 
 14
 On appeal, the Commissioner contends that the district court exceeded its authority by ordering him to place Lara at Hedges, emphasizing the district court's refusal to recognize his determination of Lara's status and its holding that administrative remedies could be exhausted under the EHA without an appeal to the Commissioner. Further, the Commissioner contends that the eleventh amendment bars an award against the state for reimbursement of Lara's tuition at Hedges. Plaintiff cross-appeals from those orders of the district court requiring exhaustion of administrative remedies and deferring further proceedings until the Commissioner issued his decision.
 
 
 15
 Since the district court ordered relief pursuant to the EHA only, we review this case solely in regard to plaintiff's claims under that statute. Although we agree with the Commissioner that the district court exceeded its authority under the EHA, we do so for a substantially different reason. The issue here is not that the court failed to give "due weight" to state proceedings, Hendrick Hudson Bd. of Educ. v. Rowley, 458 U.S. 176, 206, 102 S.Ct. 3034, 3051, 73 L.Ed.2d 690 (1982), but that under the EHA, neither the hearing officer nor the district court could order Lara's placement in an unapproved school. Because of our resolution of this issue, we do not reach the eleventh amendment question.
 
 DISCUSSION
 
 16
 The EHA "represents an ambitious federal effort to promote the education of handicapped children," Hendrick Hudson Bd. of Educ. v. Rowley, 458 U.S. 176, 179, 102 S.Ct. 3034, 3037, 73 L.Ed.2d 690 (1982), through "federal funding to state and local school systems for the purpose of special education," Dubois v. Connecticut State Bd. of Educ., 727 F.2d 44, 48 (2d Cir.1984). This funding is "conditione[d] ... upon a [s]tate's compliance with extensive goals and procedures," Rowley, 458 U.S. at 179, 102 S.Ct. at 3037, according to federal standards, Dubois, 727 F.2d at 48.
 
 
 17
 For a state to qualify for funds under the EHA, that state must have adopted "a policy that assures all handicapped children the right to a free appropriate public education," 20 U.S.C. Sec. 1412(1) (1982), and developed a plan to effect that policy, id. Sec. 1412(2). A state plan must meet the Act's requirements. Id. Sec. 1413(a). It must "assure that funds received by the [s]tate ... will be utilized ... only in a manner consistent with the goal of providing a free appropriate public education for all handicapped children." Id. Sec. 1413(a)(2) (emphasis added). An appropriate public education consists of "special education and related services" that, inter alia, "meet the standards of the [s]tate educational agency." Id. Sec. 1401(18)(B) (emphasis added). Moreover, free public education may be provided in private schools and facilities, upon reference from state or local educational agencies, to carry out the EHA's requirements, id. Sec. 1413(a)(4)(B)(i), and "in all such instances the [s]tate educational agency shall determine whether such schools and facilities meet standards that apply to [s]tate and local educational agencies," id. Sec. 1413(a)(4)(B)(ii).
 
 
 18
 Because "certain types of handicapping conditions ... require very costly educational programs," New York has determined to support such special education and to offer relief for school districts "required to enter into contracts with private schools for the purpose of providing educational opportunity" to the handicapped. 1978 N.Y.Laws, ch. 786, Sec. 1. New York has therefore adopted a plan to provide "a free appropriate public education for all handicapped children" as required by the EHA, see N.Y.Educ.Law Secs. 4201-13, 4351-58, 4401-09 (McKinney 1981 & Supp.1987); N.Y.Comp.Codes R. & Regs. tit. 8, Secs. 200.1 et seq. (1986), that "largely parallels the Act and federal regulations." Rowley v. Hendrick Hudson Bd. of Educ., 632 F.2d 945, 949 (2d Cir.1981) (Mansfield, J., dissenting), rev'd, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982).
 
 
 19
 Under the plan, each school board must establish a Committee on the Handicapped ("COH") that recommends to it appropriate educational placements for handicapped children, N.Y.Educ.Law Sec. 4402(1)(b), and develops an individualized education program ("IEP") for each handicapped child as section 1414(a)(5) of the EHA requires. See id. Sec. 4402(1)(b)(3)(b). The school board acts on the COH's recommendations by "furnish[ing] suitable educational opportunities for handicapped children [through] one of the special services or programs listed in" section 4401(2). Id. Sec. 4402(2)(a). This includes contracts with private residential schools outside the state. Id. Sec. 4401(2)(h). That option, however, is open only after the SED has determined that "there are no appropriate public or private facilities" in the state. Id. Secs. 4402(2)(b)(3), 4407(1); see Dubner v. Ambach, 52 N.Y.2d 910, 911 n.*, 419 N.E.2d 337, 338 n.*, 437 N.Y.S.2d 659, 660 n.* (1981). Further, all contracts with private schools are subject to the Commissioner's approval. Id. Sec. 4402(2)(b)(2); Semel v. Ambach, 118 A.D.2d 385, 387, 505 N.Y.S.2d 466, 467 (1986); see Gregg B. v. Board of Educ., 535 F.Supp. 1333, 1336 (E.D.N.Y.1982).
 
 
 20
 The district court found that the Commissioner "refused to provide Lara with the free, appropriate education to which she is entitled under the EHA" because the SED had declined to place Lara at Hedges, despite the determinations of the COH and the hearing officer, but had not come forward with an appropriate alternative placement. 653 F.Supp. at 1416. The court further found that Hedges was "a suitable placement for Lara and satisfies the requirements of her IEP," noting that the Commissioner did not dispute this. Id. Accordingly, Chief Judge Curtin ordered the Commissioner to effect Lara's placement. We conclude, however, that the district court had no authority to do so in this case.
 
 
 21
 The EHA requires that handicapped children in private placements have the same rights as those handicapped students placed in facilities of the state. See 20 U.S.C. Sec. 1413(a)(4)(B)(ii). "In all such instances" where handicapped children are provided special education and related services at private facilities, the state determines whether the facility meets the same standards "that apply to [s]tate and local educational agencies." Id. Thus, the EHA "expressly incorporates [s]tate educational standards" and "the [s]tate has an obligation to insure that the school meets applicable [s]tate educational standards" when a private placement is made under the EHA. Schimmel by Schimmel v. Spillane, 819 F.2d 477, 484 (4th Cir.1987). The requirement that the Commissioner approve all contracts between local school boards and private schools for the placement of handicapped children, N.Y.Educ.Law Sec. 4402(2)(b)(2), is such a standard. Neither a local school board nor the SED can approve a placement at a private school consistent with the EHA unless the Commissioner specifically approves of a facility prior to placement, in accordance with section 4402(2)(b)(2). See Schimmel, 819 F.2d at 484; Smrcka by Smrcka v. Ambach, 555 F.Supp. 1227, 1234 (E.D.N.Y.1983).
 
 
 22
 The SED's Office for the Education of Children with Handicapping Conditions, through the Division of Program Monitoring, maintains an "approved list" of private and out-of-state schools eligible to contract for the education of handicapped students from New York. See 653 F.Supp. at 1413-14. Out-of-state schools must seek approval by application to the SED, and the division monitors compliance by out-of-state schools with New York's standards and approves placements at such schools recommended at the local level. Id. at 1413.
 
 
 23
 At trial, Hanna Flegenheimer, director of the Program Monitoring Division, testified that the SED closed new admissions to the Hedges in 1985 because (1) Hedges was not licensed in its home state as the SED required for approval, (2) "seclusion rooms" were purportedly used there, and (3) the SED was concerned about a school policy that would allow students at least 14 years old to sign themselves out of treatment. Id. at 1414. Hedges thus was not available as a placement when the SED refused to approve the Buffalo COH's contract with the facility. Nor was Hedges available when the hearing officer ordered Lara's placement there in December 1985.
 
 
 24
 Neither the SED nor the Buffalo School Board could place and fund Lara in an unapproved private school "without violating the EHA's requirement that handicapped children be educated at public expense only in those private schools that meet [s]tate educational standards," Schimmel, 819 F.2d at 484. The hearing officer had no jurisdiction to compel either the school or the state to violate federal law, and thus her decision was void to the extent that it ordered Lara's placement at Hedges without the Commissioner's approval. Likewise, the district court could not order Lara's placement at Hedges without forcing the SED to violate the EHA. Although the SED reopened Hedges for new admissions of students ages 14-21 in January 1986, Lara was then only 12. Even though Lara turned 14 a week before the court's final decision in this case, the court still could not properly order Lara's placement at Hedges without the Commissioner's approval of the contract. Moreover, the SED has never approved the Devereux Day School, which Lara attended for her academic program. In fact, Hedges' campus unit administrator testified at trial that the Day School had never sought SED approval "because it served primarily Pennsylvania day students and few out-of-state students." 653 F.Supp. at 1414. Thus, the district court exceeded its authority, under 20 U.S.C. Sec. 1415(e)(2), to grant appropriate relief under the EHA. See Schimmel, 819 F.2d at 484.
 
 
 25
 We do not, however, base our decision on the district court's refusal to consider the Commissioner's decision. The Commissioner continues to press the contention that his decision is entitled to deference because "he is obligated to review a hearing officer's decision with which he disagrees," even if neither the parents nor the school board has appealed. 638 F.Supp. at 1582 (Appendix II) (Commissioner's Decision of March 14, 1986). He relies on N.Y.Educ.Law Sec. 310, granting the Commissioner the authority to initiate administrative proceedings, and N.Y.Educ.Law Sec. 4404(2), giving him the discretion to "review and modify" any school board determination concerning the nature of a handicap or the selection of a special education program. We have some doubt whether this review procedure is proper under the EHA.
 
 
 26
 The EHA provides that "any party aggrieved by the findings and decision rendered in ... [a local] hearing may appeal to the [s]tate educational agency" for an impartial review. 20 U.S.C. Sec. 1415(c). In this case the Antkowiaks received precisely the relief they sought from the hearing officer. Under the EHA, they "had neither the responsibility nor the right to appeal the favorable decision by the local hearing officer since they were not aggrieved by [her] decision." Robinson v. Pinderhughes, 810 F.2d 1270, 1272 (4th Cir.1987). Moreover, the school board chose not to appeal the hearing officer's decision. Thus, because that decision went unappealed, "it became the final administrative decision of the [s]tate" under section 1415(e)(1) of the EHA. Robinson, 810 F.2d at 1272.
 
 
 27
 Federal courts have authority under the EHA to enforce state procedure consistent with the federal scheme, but procedures "inconsistent with the federally-mandated procedures cannot, of course, be enforced by a federal court." Town of Burlington v. Department of Educ., 736 F.2d 773, 780 (1st Cir.1984), aff'd sub nom. Burlington School Comm. v. Massachusetts Dept. of Educ., 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). While state procedures which more stringently protect the rights of the handicapped and their parents are consistent with the EHA and thus enforceable, see id., those that merely add additional steps not contemplated in the scheme of the Act are not enforceable, see Diamond v. McKenzie, 602 F.Supp. 632 (D.D.C.1985). The EHA considers final any unappealed decision of a hearing officer, see 20 U.S.C. Sec. 1415(e)(1), and no further review appears to be contemplated under the Act. Thus, to the extent that the Commissioner's sua sponte review "would ... subject children and their parents to an additional step not required by the EHA," 602 F.Supp. at 639, it would seem inconsistent with the finality provision of section 1415 and therefore without "official status or standing under the EHA," id. at 638.
 
 
 28
 We observe that this case has been complicated significantly by the unusual procedural posture in which it unfolded prior to appeal. The Antkowiaks' premature resort to the federal forum without exhausting their administrative remedies, the hearing officer's decision to order relief that was in part beyond her jurisdiction to afford, and the Commissioner's use of a compulsory review procedure where the hearing officer's decision had not been appealed by the parties, have contributed to the absence of a proper resolution of Lara's case. In enacting the EHA, Congress expressly sought to place on the parents and the local educational agency "the primary responsibility for developing," through their cooperative efforts, "a plan to accommodate the needs of each individual handicapped child." Smith v. Robinson, 468 U.S. 992, 1011, 104 S.Ct. 3457, 3468, 82 L.Ed.2d 746 (1984); see Burlington, 471 U.S. at 368, 105 S.Ct. at 2002; Rowley, 458 U.S. at 208-09, 102 S.Ct. at 3051-52; S.Conf.Rep. No. 455, 94th Cong., 1st Sess. 27, reprinted in 1975 U.S. Code Cong. & Ad. News 1480, 1492 (stating that "all parties ... will be involved throughout the process of establishment, review and revision of this program" (emphasis in original)). Accordingly, the Antkowiaks and the Buffalo City School District were obliged to continue seeking an appropriate placement for Lara in cooperation with the regional office of the SED. However, because the emphasis in this case has been upon litigation against the state, rather than upon the cooperation among the parents, school board and SED envisioned by the Act, Lara remained in an unapproved placement for which her parents cannot obtain the sanction of the EHA.
 
 CONCLUSION
 
 29
 Because of our disposition of this appeal, we do not reach the other claims raised. In light of the foregoing, we reverse the judgment of the district court and remand for entry of judgment in favor of defendant.
 
 
 
 [1]
 At oral argument of this appeal, the panel was informed of Lara's departure from Hedges. The panel therefore communicated with counsel by letter dated September 23, 1987, "to inquire whether counsel contends that any claims for injunctive or declaratory relief remain viable" in light of Lara's discharge. Plaintiff-appellee's counsel maintained that all the claims for declaratory and injunctive relief remain viable. Because of our disposition of the appeal, we do not address whether any relief sought by plaintiff-appellee has been mooted or remains a live controversy