778 F.Supp. 774 (1991)
Jack Jr., Jean, and Jack III STRAUBE, Plaintiffs,
v.
FLORIDA UNION FREE SCHOOL DISTRICT, Thomas Sobol, Thomas Neveldine, Commissioners, New York State Education Department, Defendants.
No. 91 Civ. 1359 (GLG).
United States District Court, S.D. New York.
November 21, 1991.
*775 *776 Jean Straube and Jack Straube, Jr., pro se.
Serchuk & Zelermyer, New York City (Michael R. Sonberg, Michael J. Goldberger, of counsel), for defendant Florida Union Free School Dist.
Robert Abrams, Atty. Gen. of State of N.Y., New York City (Martha O. Shoemaker, of counsel), for defendants Thomas Sobol and Thomas Neveldine.

OPINION
GOETTEL, District Judge.
The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1401 et seq., requires participating state and local educational agencies "to assure that handicapped children and their parents or guardians are guaranteed a free appropriate public education." Id. § 1415(a). In addition, IDEA gives the parents of handicapped children the right to participate in the development of an "individualized education program" ("IEP") for the child and permits them to challenge in administrative and court proceedings a proposed IEP with which they disagree. Id. § 1401(19), 1415(b), (d), (e); School Committee of Town of Burlington, Mass. v. Dept. of Educ. of Mass., 471 U.S. 359, 361, 105 S.Ct. 1996, 1998, 85 L.Ed.2d 385 (1985). Because cases which challenge the child's IEP take years to run  critical years in the child's educational development  practical questions "concerning interim placement of the child and financial responsibility for that placement" arise. Id., 471 U.S. at 361, 105 S.Ct. at 1998. We are confronted with these questions today.

BACKGROUND
The plaintiff, Jack Straube III ("Jack"), has a physical condition called dyslexia which is "a developmental disorder selectively affecting a child's ability to learn to read and write which creates educational problems." Bantam Medical Dictionary (Bantam Books 1982). The dyslexia is compounded by a condition known as attention deficit disorder. As a result of this condition, Jack is classified as "learning disabled" within the meaning of the Act, 20 U.S.C. § 1401(1), and is entitled to receive, at public expense, specially designed instruction to meet his unique needs.[1] Throughout most of his schooling, Jack has been classified as learning disabled and was therefore receiving an IEP from the Florida Union Free School District ("District"). Although, during the 1990-91 school year, Jack would have been placed in the tenth grade in the public high school, *777 test scores showed that he read only at a third grade level. If Jack had continued in the public school system for the 1990-91 school year, his IEP would have been similar to that of prior years, which have not produced any degree of success in his reading progress. Frustrated with the District's failure, Jack's parents, Jean and Jack Straube, Jr., challenged his IEP as "inappropriate" and sought to place him in the Kildonan School in Armenia, New York. Kildonan is a residential school with a high degree of success in teaching dyslexic children to read. An impartial hearing was conducted to review the IEP.
It appears that shortly after the hearing commenced, the District entered into negotiations with the Straubes, indicating that it had approved the placement of Jack at Kildonan. The Straubes began the enrollment process. Subsequently, they were informed by the District that it could not authorize the Kildonan placement because the school was not "approved" by the State Education Department (SED). Unable to locate an approved school, the Straubes nevertheless enrolled Jack at Kildonan.
At the hearing, the Straubes requested that the impartial hearing officer ("IHO") direct placement at Kildonan and the reimbursement of tuition that the Straubes had already spent. Although the IHO concluded that the District's IEP was "inappropriate," Jack could not be placed in Kildonan because the school was not approved by the Department. Additionally, the IHO found that "no private school either within or without the state dealing with this child's severe learning disability, at his chronological age, is registered as an approved school." The IHO then remanded the case back to the District's Committee on the Handicapped to reformulate Jack's IEP for the 1990-91 school year. The Straubes began this suit to challenge the IHO ruling which denied both Jack's placement at Kildonan and the reimbursement of his tuition.

THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT
IDEA sets up a complicated scheme where, by meeting certain requirements, states receive funds with which to provide all handicapped children with a free and appropriate education. The purpose of this ambitious statute is to:
assure that all children with disabilities have available to them ... a free appropriate public education which emphasizes special education and related services designed to meet their unique needs, to assure that the right of children with disabilities and their parents or guardians are protected, ... and to assess and assure the effectiveness of efforts to educate children with disabilities.
20 U.S.C. § 1400(c) (1988); see Board of Educ. of the Hendrick Hudson Central School Dist., Westchester Cty. v. Rowley, 458 U.S. 176, 179-184, 102 S.Ct. 3034, 3037-39, 73 L.Ed.2d 690 (1982). The act defines "free appropriate education" to mean:
special education and related services that(A) has been provided at public expense, under public supervision and direction, and without charge, (B) meet the standards of the State educational agency, (C) include an appropriate pre-school, elementary, or secondary school education in the State involved, and (D) are provided in conformity with the individualized education program required under § 1414(a)(5) of this title.
20 U.S.C. § 1401(18) (1988). Free appropriate education requires "personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." Rowley, 458 U.S. at 203, 102 S.Ct. at 3049.
The state has the option of providing free public education in private schools and facilities, upon reference from state or local educational agencies. 20 U.S.C. § 1413(a)(4)(B)(i) (1990). In such instances, "the [s]tate educational agency shall determine whether such schools and facilities meet standards that apply to [s]tate and local educational agencies." Id. § 1413(a)(4)(B)(ii). Accordingly, New York permits placement in private residential schools both within and without the state provided that the school has been approved by the Commissioner of Education. N.Y. Educ. Law § 4402(2)(b)(2) (McKinney 1981 & Supp.1991). Although the procedure is not dictated by any federal or state statute, *778 approval is obtained upon application by the school to the Commissioner and the state's subsequent determination that the school complies with state laws and regulations.
From the student's perspective, implementation of the Act is based on the student's IEP. The IEP is basically a comprehensive statement of the educational needs of the handicapped child and the specially designed instruction and related services to be employed to meet those needs. 20 U.S.C. § 1401(19) (1990). The IEP is developed by a group of individuals, namely, a representative of the appropriate state or local agency, the child's teacher, the child's parents, and where appropriate, the child himself. Id. According to the statute, the IEP must contain, among other things, a statement of the child's present level of educational performance, a statement of annual goals, a statement of the specific services to be provided to the child, and a statement of the evaluation process to be conducted in the future. Id. In addition, IDEA requires that the IEP be reviewed and, if necessary, revised, no less than annually. 20 U.S.C. § 1414(a)(6) (1988).
Parents must be notified of any proposed change in the IEP. 20 U.S.C. § 1415(b)(1)(D) (1988). If the parents reject the IEP, under IDEA, they are entitled to an "impartial due process hearing," 20 U.S.C. § 1415(b)(2) (1990), which in New York is conducted by an impartial hearing officer ("IHO"), see N.Y.Educ.Law § 4404(1) (McKinney 1981 & Supp.1991). The IHO determination may be appealed by the aggrieved party unless it can be shown that the administrative appeal is futile. After the appeal, or in the case of futility, the IHO decision is reviewable by the dissatisfied party in either state or federal district court. 20 U.S.C. § 1415(e)(2) (1990).
Against this statutory structure, we now weigh the allegations in the Straubes' complaint.

DISCUSSION

The Eleventh Amendment
Initially, the state defendants assert their immunity from suit based on the Eleventh Amendment. Absent consent, the Eleventh Amendment prohibits the naming of a state or one of its agencies or departments as a defendant in a suit. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984). However, in a statute creating a right of action, "Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute." Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). Until 1990, states were immune from suit under the IDEA because its statutory language did "not evince an unmistakably clear intention to abrogate the state's constitutionally secured immunity from suit." Dellmuth v. Muth, 491 U.S. 223, 109 S.Ct. 2397, 105 L.Ed.2d 181 (1989). To correct the resulting "inequity" of mandating State compliance with IDEA's provisions while at the same time denying litigants the right to enforce their rights, Congress enacted 20 U.S.C. § 1403. The current statute clearly states that states are not immune from suit for a violation of the IDEA and, notably, retroactively applies this waiver to violations so long as at least part of the violation occurred after October 30, 1990. 20 U.S.C. § 1403 (1990).
Sobol and Neveldine argue that the complaint apparently bases its claims against them on their actions taken during the time of the administrative hearing which took place in August and September 1990. Thus, they contend that the Eleventh Amendment would bar this action as the violation is not alleged to have occurred in part after October 30, 1990.
However, plaintiffs allege that "[t]he defendants have not provided residential placement within the continuum of placement options for the sever[e]ly learning disabled student within New York State public schools." Complaint, ¶ 5. If this deficiency existed at the time the complaint was filed, an ongoing violation would have been stated which occurred after October 30, 1990. Thus, the Eleventh Amendment is no bar to a suit against Sobol and Neveldine.

*779 Exhaustion of Administrative Remedies
Defendants also contend that the plaintiffs have failed to exhaust their administrative remedies and thus may not bring this suit. Under federal law, only when the administrative remedies provided by the state have been exhausted may a suit be brought in federal court. 20 U.S.C. § 1415(e)(2) (1988); Riley v. Ambach, 668 F.2d 635, 640 (2d Cir.1981). There is no question that after the IHO decision, the Straubes did not take the administrative appeal available to them under New York's Education Law. See N.Y.Educ.Law 4404(c) (McKinney 1981 and Supp.1991). In addition, as the Straubes were adversely affected by the IHO decision, the IHO decision could not be deemed final, notwithstanding the failure to take the appeal. Cf. Antkowiak by Antkowiak v. Ambach, 838 F.2d 635, 641 (2d Cir.1988) (when parents receive a favorable IHO decision, no appeal is necessary and the unappealed IHO decision is final), cert. denied sub nom. Doe by Doe v. Sobol, 488 U.S. 850, 109 S.Ct. 133, 102 L.Ed.2d 105 (1988).
However, the rule that a plaintiff must exhaust state administrative remedies before bringing a federal suit under IDEA is bypassed where the exercise of state administrative remedies would be futile. Riley v. Ambach, 668 F.2d at 640-41. Futility can take the form of inadequate relief. Honig v. Doe, 484 U.S. 305, 327, 108 S.Ct. 592, 606, 98 L.Ed.2d 686 (1988).
The relief sought by the Straubes was placement of Jack in a residential program which offered the same benefits as Kildonan. Although the IHO noted that the Kildonan program appeared to be the most appropriate mechanism for addressing Jack's educational needs, this placement was not possible because Kildonan was not an "approved" private school. Defendants contend that the Straubes should have appealed to the Commissioner because there was a possibility that he would have found in their favor. See Vander Malle v. Ambach, 673 F.2d 49, 52 (2d Cir. 1982). First of all, under New York law, an appeal is no longer made to the commissioner; instead, a state review officer handles the appeal. N.Y.Educ.Law § 4404 (McKinney Supp.1991); see Louis M. by Velma M. v. Ambach, 714 F.Supp. 1276 (N.D.N.Y.1989). In addition, however compelling this case may be, see Riley v. Ambach, 668 F.2d at 642 (requiring exhaustion to see if Commissioner would depart from a general rule in a "compelling case"), the reviewing officer is not permitted to order a placement at a school that is not approved. See Lombardi v. Nyquist, 63 A.D.2d 1058, 406 N.Y.S.2d 148 (3d Dep't), appealed denied by, 45 N.Y.2d 710, 409 N.Y.S.2d 1029, 381 N.E.2d 616 (1978); Schayer v. Ambach, 102 Misc.2d 717, 424 N.Y.S.2d 105, 106 (Sup.1980). Indeed, there are state rules and regulations which govern the conditions precedent to approval of contracts between a private school and a school district. Moreover, since these regulations place the onus upon the school needing approval to make application, unless Kildonan was willing to apply and comply with state requirements for approval, the review officer could not provide the Straubes with the relief sought.
We find therefore that an administrative appeal would have been futile and exhaustion of administrative remedies was not required under these circumstances.

Sufficiency of the Claim
On a motion pursuant to Federal Rule of Civil Procedure 12(b)(6), the complaint's claims are taken "at face value," California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 515, 92 S.Ct. 609, 614, 30 L.Ed.2d 642 (1972), and dismissal is warranted only if "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Defendants argue that this court lacks jurisdiction to either require the District to order placement or reimbursement of tuition at an unapproved school. If that is the case, the plaintiffs have failed to state a claim upon which relief can be granted and dismissal of the complaint would be required.
A federal district court cannot order either placement of a child in an unapproved school or reimbursement for funds spent on an unapproved school because *780 such remedies would violate the Act's requirement that placement "meet the standards of the State educational agency." Antkowiak v. Ambach, 838 F.2d at 640; see Tucker v. Bay Shore Union Free School Dist., 873 F.2d 563 (2d Cir.1989).[2] As Kildonan was not on the approved list of schools, this court cannot unilaterally order reimbursement of Jack's tuition to the Straubes or his placement at Kildonan.
However, plaintiffs claim goes beyond the mere seeking of tuition reimbursement. They claim that the individualized educational programs for Jack developed through the Act's procedures have not been reasonably calculated to enable him to receive educational benefits. See Rowley, 458 U.S. at 207, 102 S.Ct. at 3051.[3] Moreover, they contend that the defendants have been derelict in their duty to insure that "a continuum of alternative placements is available to meet the needs of handicapped children for special education and related services" pursuant to federal regulations. See 34 C.F.R. § 300.551 (1991). Jack's insufficient educational progress raises the question of whether the educational agencies have complied with the IDEA. Thus, a claim has been sufficiently stated to survive this motion to dismiss.
Our inability to order tuition reimbursement for placement at an unapproved school does not mean that some remedy for this difficult problem is not available. The plaintiffs have been placed in the untenable position of deciding between the alternatives of an inappropriate IEP for the child or bearing themselves the expense of appropriate special education. Such a choice reflects a contravention of the Act's "stated purpose":
To assure that all children with disabilities have available to them ... a free appropriate public education which emphasizes special education and related services designed to meet their unique needs....
20 U.S.C. § 1400(c) (1990).
If the District is found to have failed to comply with or even realize its obligations under IDEA and if, indeed, no approved school is available to meet the educational needs of Jack, this court has broad discretion to order appropriate relief to give fruition to the purposes of the IDEA.[4] The question of what relief is available must await this court's determination of whether the educational authorities in this case have met their statutory obligations.[5]
*781 The parties are granted three months from the date of this decision for discovery. Any motions for summary judgment must be filed before February 21, 1992.
SO ORDERED.
NOTES
[1] Although dyslexia is not one of the enumerated handicap classifications under New York's regulations, it is a condition recognized within the definition of learning disabled.
[2] We recognize that there are factual distinctions between this case and both Tucker and Antkowiak. In Tucker, the parents simply decided to place their child in an unapproved school without ever attempting to find placement at an approved school. 873 F.2d at 567. In Antkowiak, several approved schools were available to the child but they would not accept her. 838 F.2d at 637. Here, no options for dealing with Jack's severe learning disability at his chronological age existed.
[3] The court has the power to review the decision de novo. Rowley, 458 U.S. at 205-206, 102 S.Ct. at 3050. See 20 U.S.C. § 1415(e)(2) (1990) ("the court shall receive records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."). The court's inquiry is twofold: "First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?" Id., 458 U.S. at 206-207, 102 S.Ct. at 3051.
[4] When a school district fails to provide a child with an appropriate education under IDEA, this court is authorized to "grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(e)(2) (1988).
[5] While defendants' primary argument is that Kildonan is an unapproved school and therefore not a viable option for Jack, the lack of a school offering such a program on the approved list may reflect a problem with the state approval procedures. However, "[w]hile state procedures which more stringently protect the rights of the handicapped ... are consistent with the [IDEA] and thus enforceable, those that merely add additional steps not contemplated in the scheme of the act are not." Antkowiak, 838 F.2d at 641 (citations omitted). The Act requires that the school's program "meet the standards of the State," 20 U.S.C. § 1401(18), not that it appear on a list of preapproved schools. Whether New York's approval process is consistent with the demands of the IDEA is an issue which surely must be addressed at some point in this litigation.