700 F.2d 134
 9 Ed. Law Rep. 499
 Michael ("Micki") Kelly HESSLER, a minor, by her mother and
next friend, Sheila BRITT and J. Joel and Sheila
Britt, Appellants,
v.
STATE BOARD OF EDUCATION OF MARYLAND and William G. Sykes
(President), Lawrence Miller, Mary Elizabeth Ellis, Joanne
T. Goldsmith, Albertine T. Lancaster, Verna M. Fletcher, May
B. Bolt, G. George Asaki and Frederick K. Schoenbrodt,
individually and as members of the State Board of Education
and David W. Hornbeck, individually and as State
Superintendent of Schools and Martha J. Irvin, individually
and as Assistant State Superintendent, Division of Special
Education, and Board of Education of Montgomery County and
Daryl W. Shaw (President), Carol F. Wallace, Joseph R.
Barse, Blair G. Ewing, Marian L. Greenblatt, Elizabeth W.
Spencer, Eleanor D. Zappone, individually and as members of
the Board of Education of Montgomery County and J. Edward
Andrews, individually and as Superintendent, Montgomery
County Public Schools and Hiawatha B. Fountain, individually
and as Associate Superintendent for Continuum Education, Appellees.
 No. 81-2185.
 United States Court of Appeals,
Fourth Circuit.
 Argued Nov. 9, 1982.
Decided Feb. 10, 1983.
 
 Glen M. Fallin, Upper Marlboro, Md., for appellants.
 Richard E. Ekstrand, Upper Marlboro, Md. (McGill & Ekstrand, Upper Marlboro, Md., Charles A. Reese, Reese & Carney, Ellicott City, Md., on brief), for county appellees.
 Ellen M. Heller, Asst. Atty. Gen., Baltimore, Md. (Stephen H. Sachs, Atty. Gen. of Maryland, Diana G. Motz, Asst. Atty. Gen., Baltimore, Md., on brief), for appellees.
 Before WINTER, Chief Judge, CHAPMAN, Circuit Judge, and BUTZNER, Senior Circuit Judge.
 HARRISON L. WINTER, Chief Judge:
 
 
 1
 Plaintiffs, a handicapped child who sues by her mother and her parents, sued the Montgomery County, (Maryland) Board of Education, certain of its employees, the Maryland State Board of Education and certain of its employees alleging a denial of their constitutional rights[1] and the rights created for them by certain federal statutes[2] relating to the education of handicapped children. Essentially their claim was that when defendants formulated a special education program for their daughter, defendants improperly failed to consider placing her in a private school; and, as a consequence, they are entitled to be reimbursed for the cost of tuition paid to the private school which the child has attended.
 
 
 2
 On a motion under Rule 12(b)(6)[3], the district court dismissed the complaint, and plaintiffs appeal. We affirm.
 
 I.
 
 3
 Michael "Micki" Kelly Hessler is a seventeen-year-old girl who resides with her mother and stepfather in Montgomery County, Maryland. For her first eight grades of schooling, her parents sent her to a nonpublic school. During this time she was not identified as handicapped and she received no special education services. However, she did have prolonged academic difficulties. Because of these, first the nonpublic school and, then, her parents, requested the County Board of Education for public school special education services. The first request was made March 3, 1980. Pursuant to this request, the County Board conducted speech, language and psychological evaluations of the child and it also considered an evaluation that the parents had obtained privately at the time they requested public school services.[4] When the results of the evaluations were known, an evaluation committee met on June 25, 1980, with the child's mother in attendance. Initially the possibility of Level IV services was considered but this proposal was rejected.[5] It was agreed that the child should have Level V services.[6] An "individualized educational program" (IEP) for the child was presented to the mother at the same meeting, although it was not signed by her. The mother was informed of the County Board's offer of placement in accordance with the committee proposal by letter of July 23, 1980.
 
 
 4
 The designation of the actual school, or learning center, that Micki was to attend was made in a letter to the child's mother written on August 21, 1980, immediately prior to the beginning of the school year. The mother was also advised that her written consent to the child's enrollment at the Lee Learning Center was required. The mother visited the Center on September 4 and 5, 1980, but she withheld her consent and on September 10, 1980 filed an appeal, stating "[b]ecause I do not feel that my daughter's best interests are served in this recommendation, I am asking that it be appealed." The mother then enrolled the child in the Chelsea School, a nonpublic school having no special education program. A request for tuition reimbursement followed.
 
 
 5
 On February 11, 1981, after a request for postponement of an earlier hearing date by plaintiffs' counsel was made and granted, and after another proposal by plaintiffs' counsel was rejected, the County Board of Education heard plaintiffs' appeal. The hearing was far-ranging, but it centered upon the plaintiffs' request that they be reimbursed in whole or in part for the cost of tuition at the Chelsea School and the cost of private evaluation services. The County Board denied both requests for payment. The hearing officer found that the child was handicapped, that the County Board had carried out its statutory duties, that the child was doing well at the Chelsea School and special placement and special instruction with support services were no longer needed, and that the parents could place the child in public schools at any time.
 
 
 6
 In exercise of their right under state law, plaintiffs appealed to the State Board of Education. Again, plaintiffs' emphasis was on reimbursement of tuition costs and the cost of private evaluations. Their claim was that the public program offered them was inappropriate in that the County school officials had failed to carry out their statutory duties. The State Board found, inter alia, that the Level V education program at the Lee School could provide for the child's educational needs and that the County Board had followed correct procedures. Accordingly, reimbursement was denied. This suit followed.
 
 II.
 
 7
 Before us plaintiffs make three contentions. First, they assert, grounded primarily on a bylaw of the State Board of Education, that the County Board was under a duty to consider placing the child in a nonpublic school, and for failure to carry out that duty, it should be liable for nonpublic school tuition. Second, they assert that the public special education program was inappropriate for the child in the sense that the program available at Chelsea School was more appropriate in several respects. Third, and this is more in the nature of anticipation of a defense, plaintiffs contend that their claim for reimbursement is not barred by the Eleventh Amendment. Because of our resolution of plaintiffs' first two contentions, we have no occasion to reach the third.
 
 III.
 
 8
 To assess the meaning and effect of the Bylaw on which plaintiffs rely for their first contention, we must review its statutory underpinnings.
 
 
 9
 Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. Sec. 794 (1982), guarantees to handicapped individuals the right to participate in and receive the benefits of any program or activity receiving federal financial assistance. Maryland's public schools are an activity which receives federal financial assistance. Additionally, the Comprehensive Employment and Training Act of 1973, as amended by the Education of All Handicapped Children Act of 1975, 20 U.S.C. Secs. 1401 et seq., offers grants in aid to states providing education to the handicapped and electing to take advantage of the provisions of the Act. Among the conditions which a state must meet in order to receive financial assistance is that of providing education to handicapped children in private schools at no expense to their parents if they are placed in private schools as a means of carrying out the state's duty to provide them special education. As construed by the regulations, 34 C.F.R. Sec. 300.403, the duty of a state to pay for nonpublic schooling does not attach "[i]f a handicapped child has available a free appropriate public education and the parents choose to place the child in a private school or facility ...." However, if there is a disagreement between parent and school officials "regarding the availability of a program appropriate for the child," the parent is guaranteed procedural due process rights to notice and a hearing. 34 C.F.R. Sec. 300.403(b).
 
 
 10
 Maryland has adopted statutes and regulations to carry out its obligations to provide for the special education of handicapped children. By statute, Md.Ann.Code Education Article, Secs. 8-401 et seq., Maryland has adopted a comprehensive scheme including such provisions as requiring the adoption of bylaws by the State Board of Education prescribing standards for the identification, diagnosis, examination and education of each child requiring special educational services, Sec. 8-403, and requiring the adoption of plans in conformity therewith by the county boards of education, Sec. 8-404. A child who needs special educational services not provided for in a public program shall be placed in an appropriate nonpublic educational program and the cost borne by the state and county. Sec. 8-409.
 
 
 11
 The bylaw on which plaintiffs rely manifestly was adopted as part of the overall scheme which we have succinctly described. Too lengthy to be set forth in its entirety, we quote and italicize only the portion on which plaintiffs rely, viz:
 
 
 12
 (4) Special Regulations Applicable to Certain Nonpublic Placements.
 
 
 13
 (a) This subsection applies to the approval of the placement of a child in a nonpublic program which meets both of these requirements:
 
 
 14
 (i) The cost of the program does not require a contribution from the State in addition to that specified under Education Article, Secs. 8-417.2(d)(2) and 8-417.3, Annotated Code of Maryland; and
 
 
 15
 (ii) The program is located in or within daily commuting distance from the child's place of residence.
 
 
 16
 (b) Notwithstanding other provisions of Sec. F of this regulation, local education agencies shall work cooperatively with nonpublic schools providing programs meeting the requirements of Sec. F(4)(a) of this regulation. A local education agency may approve the placement of a handicapped child in a nonpublic facility that provides an appropriate program of special education services as defined in Regulation .02C for the child and meets the requirements of Sec. F(4)(a). The State Department of Education will approve such a placement approved by the local education agency unless the State Department of Education identifies and approves a different placement (which the State Department of Education may require the local education agency to establish) upon the basis of a determination by the State Department of Education, that is less costly and provided in a less restrictive environment. (italics added).
 
 
 17
 Bylaw 13A.05.01.06F(4)(a) and (b).
 
 
 18
 Plaintiffs argue that this language requires a county school board in every instance to consider the availability and appropriateness of nonpublic educational services in determining the placement of a handicapped child. We disagree. While the federal and state statutory schemes clearly contemplate the use of nonpublic educational services under some circumstances, we think it clear that such resort is limited to those instances in which public educational services appropriate for the handicapped child are not available. Thus, in the case at bar, when the County Board determined that it maintained a Level V public education service which was appropriate for the infant plaintiff, it had no duty to consider the appropriateness of the nonpublic, nonspecial educational service offered by the Chelsea School. Absent such a duty, there was no breach giving rise to a claim for reimbursement of the cost of nonpublic education by the parents.
 
 IV.
 
 19
 Of course under the federal statutes, the state statutes and the bylaws of the State Board, parents who wish to contest the appropriateness of available public special educational services are guaranteed that right. See 20 U.S.C. Sec. 1415; 34 C.F.R. Secs. 300.500 et seq.; Md.Ann.Code, Education Article, Sec. 8-415; State Board Bylaws 13A.05.01.06 et seq. The record of the proceedings before the County Board and the State Board, both of which are part of this record, show that plaintiffs were afforded their procedural rights.
 
 
 20
 They contend before us, however, that upon their allegations that the Chelsea School offered an educational program within commuting distance of their home that was "less detrimental", "less restrictive" and "less costly" than the public special educational placement proposed, they were entitled to a plenary hearing under the EAHCA, 20 U.S.C. Sec. 1415(e)(2).[7] We disagree.
 
 
 21
 We have read plaintiffs' complaint closely, including the various statutory references and references to regulations in their prayers for relief. Nowhere do they allege that the Lee Learning Center is not appropriate. At most they allege that the Chelsea School is within commuting distance,[8] that it is less restrictive in that it probably has a shorter school day and permits Micki to have greater opportunity to associate with nonhandicapped children, and that it is less costly. Allegations that Chelsea School is better than Lee Learning Center do not state a meritorious cause of action.
 
 
 22
 First, we do not think that because a given school is allegedly more appropriate than another school, the less appropriate school becomes inappropriate. Second, the unexpressed premise of the allegations is that there is a constitutional and statutory obligation to provide the infant plaintiff the best education, public or nonpublic, that money can buy. Such a premise is in conflict with the recent decision in Board of Education of the Hendrick Hudson Central School District v. Rowley, --- U.S. ----, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). That case held that a state availing itself of financial assistance under EAHCA was not thereby required to provide a handicapped child all services necessary to maximize his or her potential commensurate with the opportunity provided to other children in order to fulfill the statutory duty to offer a free "appropriate education". Rather, the obligation is to provide personalized instruction with sufficient support services to enable the handicapped child to benefit educationally from that instruction. In the language of the Court's opinion:
 
 
 23
 We therefore conclude that the "basic floor of opportunity" provided by the Act consists of access to specialized instruction and related services which are individually designed to provide educational benefit to the handicapped child.
 
 
 24
 --- U.S. at ----, 102 S.Ct. at 3048, 73 L.Ed.2d at 708 (footnote omitted).
 
 
 25
 In sum, because a given educational placement is allegedly more appropriate than another, it does not follow that the less appropriate program is not "appropriate" within the meaning of the Act. The inappropriateness must be specifically alleged. Thus we conclude that plaintiffs have not alleged a violation of this duty so as to entitle them to relief.
 
 V.
 
 26
 Defendants rely on our holding in Stemple v. Board of Education of Prince George's County, 623 F.2d 893 (4 Cir.1980), cert. denied, 450 U.S. 911, 101 S.Ct. 1348, 67 L.Ed.2d 334 (1981), to urge that this suit is barred. In Stemple we ruled that the failure of parents to keep their child in public school pending the outcome of administrative and judicial review of a placement decision violated their duty to maintain the status quo, thus disentitling them to tuition reimbursement. Defendants would have us read Stemple as an absolute bar to recovery whenever there is a unilateral placement choice by parents, and plaintiffs argue that it should be overruled.[9] In view of our conclusions on the merits of the case, we have no occasion to consider Stemple, although we note that the statute which it construed appears to draw a distinction between continuance in a current educational placement and an initial admission.[10]
 
 
 27
 AFFIRMED.
 
 
 
 [1]
 Plaintiffs alleged violations of the equal protection and due process clauses of the Fourteenth Amendment
 
 
 [2]
 Plaintiffs also alleged violations of Sec. 504 of the Rehabilitation Act of 1973, 29 U.S.C. Sec. 794; the Education of the Handicapped Amendments of 1974, 20 U.S.C. Secs. 1402 et seq.; and the Education of All Handicapped Children Act of 1975 (EAHCA), 20 U.S.C. Secs. 1401 et seq
 
 
 [3]
 Despite the fact that the motion was one made on the pleadings, the administrative record of proceedings before the County Board of Education and the State Board of Education, as well as certain letters, were before the district court without objection. The proceedings were therefore more in the nature of a motion for summary judgment under Rule 56
 
 
 [4]
 In the district court, plaintiffs sought reimbursement for the cost of this private evaluation. Reimbursement had been denied administratively in the proceedings discussed later in the text. The district court also denied reimbursement on the ground that the private evaluation was not compelled because the County Board had carried out its duty under applicable regulations to make an appropriate educational assessment of a child. No claim for reimbursement is made in this appeal
 
 
 [5]
 Level IV services are defined in Bylaw 13A.05.01.06E(3)(d) of the State Board of Education. They include, inter alia, six hours of educational services per day in special classes having an average of ten handicapped students per teacher
 
 
 [6]
 Level V services are defined in Bylaw 13A.05.01.06E(3)(e). They include educational services for an entire school day in a special class having an average of six handicapped students per teacher but no more than seven
 
 
 [7]
 20 U.S.C. Sec. 1415(e)(2) reads in pertinent part:
 "Any party aggrieved by the findings and decision made [by the State educational agency on administrative appeal] shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy. In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."
 
 
 [8]
 The present record does not reflect the proximity of the Lee Learning Center to the child's home. The lack of any allegation that it is not within commuting distance may be significant
 
 
 [9]
 An exception to Stemple was recognized in Anderson v. Thompson, 658 F.2d 1205 (7 Cir.1981) and Stemple was not followed in Blomstrom v. Mass. Dept. of Education, 532 F.Supp. 707, 712-13 (D.Mass.1982). It was followed in Foster v. D.C. Bd. of Education, 523 F.Supp. 1142, 1146 (D.D.C.1981) and Monahan v. Nebraska, 645 F.2d 592, 598 (8 Cir.1981)
 
 
 [10]
 Section 1415(e)(3) reads in full:
 "During the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child, or, if applying for initial admission to a public school, shall, with the consent of the parents or guardian, be placed in the public school program until all such proceedings have been completed."