**Pamela TUCKER and Michael Tucker, individually and as parents and natural guardians of Jonas Tucker, Plaintiffs–Appellants,**

v.

**BAY SHORE UNION FREE SCHOOL DISTRICT, Defendant–Appellee.**

No. 694, Docket 88–7804.

United States Court of Appeals,
Second Circuit.

Argued Jan. 23, 1989.

Decided April 18, 1989.

Seth P. Stein, Garden City, N.Y., for plaintiffs-appellants.

Lawrence W. Reich (Ingerman, Smith, Greenberg, Gross, Richmond, Heidelberger & Reich, Northport, N.Y., of counsel), for defendant-appellee.

Before MESKILL and PRATT, Circuit Judges.*

MESKILL, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the Eastern District of New York, Wexler, J., granting the Fed.R.Civ.P. 12(b)(6) motion of defendant-appellee Bay Shore Union Free School District (the School District) and dismissing the complaint of plaintiffs-appellants Pamela and Michael Tucker (the Tuckers). The Tuckers' complaint is based on the Education of the Handicapped Act ("the EHA" or "the Act"), Pub.L. No. 91–230, 84 Stat. 175 (1970), as amended, 20 U.S.C. §§ 1400–1485 (1982 & Supp. IV 1986), and seeks, *inter alia,* reimbursement of expenses they incurred in placing their handicapped child in a private school.

We affirm.

## BACKGROUND

In reviewing the district court's grant of the School District's Fed.R.Civ.P. 12(b)(6) dismissal motion, we accept as true the facts alleged in the Tuckers' complaint. *See, e.g., Cine 42nd Street Theater Corp. v. Nederlander Org., Inc.,* 790 F.2d 1032, 1037 (2d Cir.1986); *Quackenbush v. John-*

---

* Pursuant to § 0.14(b) of the Rules of this Court, this appeal is being determined by Judges Meskill and Pratt, who are in agreement. Judge Altimari, a member of the original panel, recused himself prior to oral argument.

*son City School District,* 716 F.2d 141, 143 (2d Cir.1983), *cert. denied,* 465 U.S. 1071, 104 S.Ct. 1426, 79 L.Ed.2d 750 (1984).

Jonas Tucker is now fifteen years old. He is educationally handicapped and has been classified as learning disabled. The Tuckers are Jonas' parents. The School District is the school district in which the Tuckers reside.

On August 30, 1985, as the 1985–86 school year was about to begin, the School District's Committee on the Handicapped (COH) held its first formal meeting to formulate an educational plan for Jonas for that year. Before the COH made any recommendation, the Tuckers unilaterally placed Jonas in the Eagle Hill School. On September 11, after the school year had already begun, the COH made its recommendation for a placement for Jonas.

Upon receiving the recommendation of the COH regarding Jonas' 1985–86 placement, the Tuckers requested a hearing to challenge the recommendation, claiming that it was inappropriate for Jonas and also that it had not been made in a timely manner. They also requested payment of Jonas' tuition at the Eagle Hill School. A bifurcated hearing began on December 11, 1985. The first part of the hearing considered the appropriateness of the COH recommendation. If it were determined that the recommendation had been inappropriate, then another hearing would be held to determine whether the Tuckers should receive reimbursement of the Eagle Hill School tuition.

In a March 3, 1986 decision, the hearing officer overruled the COH recommendation on the grounds that it was untimely and also lacked sufficient information to allow the Tuckers to make a reasoned assessment of it. The Tuckers immediately requested scheduling of the second hearing concerning reimbursement. This hearing was held on June 12, 1987. The Tuckers requested reimbursement of Jonas' tuition at the Eagle Hill School for the 1985–86 and 1986–87 school years.

In an August 25, 1987 decision, the hearing officer found that placement at the Eagle Hill School had been appropriate to meet Jonas' educational needs. Nevertheless, the Tuckers were denied tuition reimbursement for that placement on the ground that the Eagle Hill School was not approved by the Commissioner of Education for the State of New York (the Commissioner) for the education of handicapped children.[1] The Tuckers appealed this decision to the Commissioner. On November 25, 1987, the Commissioner, citing N.Y. Educ.Law §§ 4401(2), 4402(2) (McKinney 1981 & Supp.1989), upheld the hearing officer's decision denying tuition reimbursement because the Eagle Hill School was not approved by the Commissioner for public funding for the education of handicapped children.

The Tuckers filed a complaint in the United States District Court for the Eastern District of New York in February 1988. They asserted a cause of action based on the EHA, as interpreted by the Supreme Court in *Burlington School Committee v. Department of Education,* 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). The complaint claimed that the School District had failed to make a timely and appropriate recommendation and that the Tuckers' own placement of their child at the Eagle Hill School was appropriate to meet Jonas' educational needs. The Tuckers maintained that N.Y.Educ.Law §§ 4401(2) and 4402(2) do not bar their cause of action, or, alternatively, that because those provisions conflict with 20 U.S.C. § 1415(e)(2) and *Burlington,* they are invalid under the Supremacy Clause. The Tuckers sought reimbursement of Jonas' Eagle Hill School tuition for the 1985–86, 1986–87 and 1987–88 school years, along with declaratory and injunctive relief.

The School District moved for dismissal of the complaint pursuant to Fed.R.Civ.P.

---

1. An unapproved school is not necessarily an inferior school. There was evidence before the hearing officer that would suggest that Eagle Hill's unapproved status was at least in part the consequence of its unwillingness to follow the state approved curriculum or to admit emotionally disturbed students.

12(b)(6). In the alternative, the School District sought an order pursuant to Fed.R. Civ.P. 19(a) compelling the joinder of the Commissioner as an indispensable party or an order pursuant to Fed.R.Civ.P. 20 authorizing permissive joinder of the Commissioner. After hearing argument, the district court, in a ruling from the bench, granted the School District's 12(b)(6) motion, relying on our decision in *Antkowiak by Antkowiak v. Ambach*, 838 F.2d 635 (2d Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 133, 102 L.Ed.2d 105 (1988). Judgment was entered dismissing the complaint, and the Tuckers now appeal from that judgment.

### DISCUSSION

In *Antkowiak*, we examined in some detail the provisions of the EHA and its implementation by the State of New York. 838 F.2d at 639–41. We will not repeat that entire discussion here. We note again, however, that as a participant and recipient of funding under the EHA, New York is required to have "adopted 'a policy that assures all handicapped children the right to a free appropriate public education,' 20 U.S.C. § 1412(1) (1982), and developed a plan to effect that policy, *id.* § 1412(2)." *Antkowiak*, 838 F.2d at 639.

In application, the specific meaning of the "free appropriate public education" guaranteed by the EHA can be a difficult issue for the courts. *See Board of Education v. Rowley*, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982); *Kerkam v. McKenzie*, 862 F.2d 884, 886–89 (D.C.Cir. 1988). The EHA is explicit in some respects, however, defining "[free] appropriate public education" to consist of " 'special education and related services' that, *inter alia, 'meet the standards of the [s]tate educational agency.' "* *Antkowiak*, 838 F.2d at 639 (quoting 20 U.S.C. § 1401(18)(B)) (emphasis added in *Antkowiak*).

Under the plan adopted by New York, "each school board must establish a [COH] that recommends to it appropriate educational placements for handicapped children, N.Y.Educ.Law § 4402(1)(b), and de-velops an individualized education program ("IEP") for each handicapped child as section 1414(a)(5) of the EHA requires. *See id.* § 4402(1)(b)(3)(b)." *Antkowiak*, 838 F.2d at 639. As the Supreme Court has said, the IEP, "the *modus operandi* of the Act," is "a comprehensive statement of the educational needs of a handicapped child and the specially designed instruction and related services to be employed to meet those needs." *Burlington*, 471 U.S. at 368, 105 S.Ct. at 2002.

Under the EHA, parents play an important role in developing the IEP for their child. *See id.* Foreseeing the possibility that, despite their opportunity to influence the formulation of the IEP, parents might nevertheless disagree with the IEP ultimately proposed for their child, the EHA provides an "elaborate set of ... 'procedural safeguards' to insure the full participation of the parents and proper resolution of substantive disagreements." *Id.* (quoting 20 U.S.C. § 1415). Under section 1415(b)(2) of the EHA, parents are entitled to an "impartial due process hearing." Further, the Act specifically provides a cause of action in state or federal court to " '[a]ny party aggrieved by the findings and decision' made after the due process hearing." *Burlington*, 471 U.S. at 369, 105 S.Ct. at 2002 (quoting 20 U.S.C. § 1415(e)(2)).

When an aggrieved party brings an action under section 1415(e)(2), the court is empowered to grant "such relief as the court determines is appropriate." 20 U.S.C. § 1415(e)(2). In *Burlington*, the Supreme Court considered the question "whether this grant of authority includes the power to order school authorities to reimburse parents for their expenditures on private special education for a child if the court ultimately determines that such placement, rather than a proposed IEP, is proper under the Act." 471 U.S. at 369, 105 S.Ct. at 2002. The Court answered the question in the affirmative. In so doing, the Court recognized the dilemma that would otherwise face a parent wishing to contest the IEP through the time consuming procedural safeguards of section 1415,

namely, "go along with the IEP to the detriment of their child if it turns out to be inappropriate or pay for what they consider to be the appropriate placement." 471 U.S. at 370, 105 S.Ct. at 2003. The *Burlington* Court held that if parents choose the latter course, unilateral private placement of their child, they may receive reimbursement of the cost of such placement if a court later determines that their own assessment of the inappropriateness of the recommended IEP was correct. If, on the other hand, "the courts ultimately determine that the IEP proposed by the school officials was appropriate, the parents would be barred from obtaining reimbursement for any interim period." 471 U.S. at 374, 105 S.Ct. at 2004.

In this case, the Tuckers objected to the IEP recommended on September 11, 1985 by the COH. They chose not to "go along with [an] IEP" they believed would be "to the detriment of their child." *See Burlington*, 471 U.S. at 370, 105 S.Ct. at 2003. Instead, Jonas remained in the Eagle Hill School while the Tuckers challenged the IEP by means of the "impartial due process hearing" guaranteed them by section 1415(b)(2). The process included a bifurcated hearing before a hearing officer appointed by the School District's Board of Education, and a subsequent appeal to the Commissioner. The result was a determination that the COH's recommended IEP had indeed been inappropriate, but that the Tuckers could not obtain reimbursement of the cost of the unilateral private placement of Jonas at the Eagle Hill School because that school is not on the Commissioner's "approved list" of schools for the education of the handicapped. Unsatisfied with this decision, the Tuckers brought this action under section 1415(e)(2), seeking the reimbursement that they claim the *Burlington* Court held to be appropriate relief under that section. They do not claim that any of Jonas' statutory or constitutional rights to an "impartial due process hearing," *see* 20 U.S.C. § 1415(b)(2), were violated by the proceedings before the hearing officer or by the Commissioner's consideration of the appeal. *See Burr by Burr v. Ambach*, 863 F.2d 1071, 1075–77 (2d Cir.1988) (involving appeal to the Commissioner from decision of a hearing officer appointed by the state); *Muth v. Central Bucks School District*, 839 F.2d 113, 123 (3d Cir.), *cert. granted sub nom. Gihool v. Muth*, —— U.S. ——, 109 S.Ct. 52, 102 L.Ed.2d 30 (1988); *cf. Rowley*, 458 U.S. at 206, 102 S.Ct. at 3051 (court may assess state's compliance with EHA procedures in a § 1415(e)(2) action).

In this appeal from the dismissal of their action for reimbursement, the Tuckers concede that the Eagle Hill School is not on the state's "approved list" of private schools eligible to contract with the state for the education of handicapped students. *Cf. Antkowiak*, 838 F.2d at 640. They further concede, as they must, that consequently, under our decision in *Antkowiak*, the School District could not have placed Jonas at the Eagle Hill School, nor could the district court have ordered such a placement. *See Antkowiak*, 838 F.2d at 640. Placing Jonas at Eagle Hill would have " 'violat[ed] the EHA's requirement that handicapped children be educated at public expense only in those private schools that meet [s]tate educational standards.' " *See id.* (quoting *Schimmel by Schimmel v. Spillane*, 819 F.2d 477, 484 (4th Cir.1987)).

Nevertheless, the Tuckers argue here that "*Antkowiak* [was] not a *Burlington* case," and that therefore the district court erroneously found *Antkowiak* controlling. They maintain that *Antkowiak* only involved the issue of a placement made by the state or a school district and not the situation of reimbursement under section 1415(e)(2) for a unilateral private placement by parents. They argue that to obtain reimbursement under section 1415(e)(2) and *Burlington*, they need only show that the School District's proposed IEP was "inappropriate," and that there is no additional requirement of a showing that the Eagle Hill placement met state educational requirements. The Tuckers rely on *Alamo Heights Independent School District v. State Board of Education*, 790 F.2d 1153, 1160–61 (5th Cir.1986), for the proposition that parents making a unilateral placement while challenging an IEP are accorded greater flexibility than is a school district

making a placement, and that the parents may place their child in a school that does not satisfy all the requirements of the EHA. They echo the Fifth Circuit's observation that, under such circumstances, even a program inadequate under the EHA is "better than no ... program at all." *See Alamo Heights*, 790 F.2d at 1161.

The record before us reveals little about the circumstances surrounding the Tuckers' placement of Jonas at the Eagle Hill School. We have no information with respect to the availability or non-availability to the Tuckers of placements in schools that were approved by the Commissioner. It may be that when confronted with an IEP they were convinced was "inappropriate," the Tuckers did not even attempt to find a placement in an approved school. Instead, they may simply have seized the opportunity and enrolled Jonas at Eagle Hill, their placement of choice, comfortable in the belief that the cost would ultimately be borne by the School District under *Burlington*. Such a scenario would make reimbursement troublesome. The EHA guarantees to a handicapped child an education that is "appropriate," not one that provides everything that might be thought desirable by "loving parents." *See Kerkam*, 862 F.2d at 886; *see also Burlington*, 471 U.S. at 373–74, 105 S.Ct. at 2004–05 (where school officials' recommended IEP is "appropriate," parents may not obtain reimbursement). Thus, we recognize a danger here that the Tuckers might have sought to exploit the EHA by selecting Eagle Hill without first fulfilling their obligation to work together with school officials to find a placement that was "appropriate" within the meaning of the EHA. *See Antkowiak*, 838 F.2d at 642.

On the other hand, it may be that the Tuckers did everything in their power to find a school for Jonas that was on the state's "approved list," but were unable to do so. We find no indication in the record of any effort on the part of the School District to assist the Tuckers in any way in finding a mutually acceptable alternative to the proposed IEP. We find this troubling, as the School District was no freer than were the Tuckers to leave to the other party the responsibility of searching for an acceptable placement. *See id.* It may be that having made its recommendation, the School District meant to leave the Tuckers alone with a "take it or leave it" crisis, namely, deciding between the alternatives of accepting the proposed IEP or leaving their child at home without a placement. Such an "unfortunate" situation, *see Burr*, 863 F.2d at 1076, would constitute a "less than complete" safeguarding of Jonas' rights under the EHA, *see Burlington*, 471 U.S. at 370, 105 S.Ct. at 2003.

We have added these observations to highlight the importance of the responsibilities placed on both parents and school officials to work together in a "cooperative approach," *see Burlington*, 471 U.S. at 368, 105 S.Ct. at 2002, to develop and implement an IEP and placement that fully provide a child with the "free appropriate public education" to which he or she is entitled under the EHA. We are unable to determine from this record whether either or both of the parties in this case were derelict in fulfilling these mutual responsibilities owed to Jonas, although there is evidence to suggest that both parties were all too eager to accept the status quo rather than working towards development of an appropriate IEP and searching for an approved placement.[2] We conclude, however, that it is not necessary to determine who bears responsibility for Jonas' having spent several years in an unapproved placement. Although we recognize a possibility that they may have had little choice in doing so, because the Tuckers placed Jonas in an unapproved school, we find that this case is

---

**2.** In his November 25, 1987 decision rejecting the Tuckers' appeal, the Commissioner stated:

I am constrained to comment on the lengthy delays and apparent inaction of the parties prior to this appeal. Petitioner's son has been enrolled in an unapproved school since September of 1985. There is no indica-

tion in the record before me that respondent has evaluated petitioner's son since August, 1985. Furthermore, the lengthy delays in the conduct of the hearing which was initially requested in August of 1985, which were apparently acquiesced in by the parties, are totally unacceptable.

controlled by our decision in *Antkowiak,* and the judgment of the district court must be affirmed.

Contrary to the argument of the Tuckers, *Antkowiak* was, at least in part, "a *Burlington* case." Admittedly, the panel's opinion focused on the issue whether the state or school district could place a child in an unapproved school, or be ordered by a court to do so. Nevertheless, the district court, citing *Burlington,* had awarded Mr. Antkowiak reimbursement of the costs of his unilateral placement of his daughter Lara in an unapproved school. *See Antkowiak by Antkowiak v. Ambach,* 653 F.Supp. 1405, 1417–19 (W.D.N.Y.1987), *rev'd,* 838 F.2d 635 (2d Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 133, 102 L.Ed.2d 105 (1988). On appeal, the Commissioner argued that the reimbursement award was barred by the Eleventh Amendment to the United States Constitution. *Antkowiak,* 838 F.2d at 638. In summarizing its holding, the panel stated that "under the EHA, neither the hearing officer nor the district court could order Lara's placement in an unapproved school. Because of our resolution of this issue, we do not reach the eleventh amendment question." *Id.,* 838 F.2d at 639. The panel reversed the judgment of the district court which included the award of reimbursement, and remanded the case for entry of judgment in favor of the defendant Commissioner. *Id.,* 838 F.2d at 642.

We conclude that the *Antkowiak* panel reversed the district court's award of reimbursement for the same reason it held that neither the local school board, the state nor the district court could effect Mr. Antkowiak's desired placement, namely, the unapproved status of the placement. Thus, we find that the holding of *Antkowiak* disposes of the Tuckers' argument here. Under *Antkowiak,* a parent may not obtain reimbursement for a unilateral placement if that placement was in a school that was not on New York's " 'approved list' of private and out-of-state schools eligible to contract for the education of handicapped students from New York." *Id.,* 838 F.2d at 640; *see also Hiller v. Board of Education,* 687 F.Supp. 735, 741–42 (N.D.N.Y.1988); *cf.*

*Schimmel,* 819 F.2d at 484 (no reimbursement for unilateral placement in school not approved by State of Virginia). The basis for this result is the "EHA's requirement that handicapped children be educated at public expense only in those private schools that meet [s]tate educational standards.' " *Antkowiak,* 838 F.2d at 640 (quoting *Schimmel,* 819 F.2d at 484); *see also* 20 U.S.C. § 1401(18)(B). The Eagle Hill School was not approved by the State of New York for education of the handicapped, and the Tuckers therefore may not obtain reimbursement of the cost of their placing Jonas there.

We reject the Tuckers' argument that this result is inconsistent with *Burlington.* The Supreme Court itself framed the relevant issue in *Burlington* as being whether section 1415(e)(2) gave courts "the power to order school authorities to reimburse parents for their expenditures on private special education for a child if the court ultimately determines that *such placement,* rather than a proposed IEP, *is proper under the Act.*" 471 U.S. at 369, 105 S.Ct. at 2002 (emphasis added). Our decision in *Antkowiak* must be read to have concluded that a placement in an unapproved school, whether by school officials or through unilateral action by parents, cannot be considered "proper under the Act" because it would violate the Act's requirement that placements "meet the standards of the State educational agency," 20 U.S.C. § 1401(18)(B). *See Hiller,* 687 F.Supp. at 741–42. Thus, section 1415(e)(2), as interpreted by *Burlington,* does not empower the district court to award reimbursement to the Tuckers.

## CONCLUSION

Because "proof of the facts alleged in the complaint clearly would not support the plaintiff[s'] claim for relief," *Costello v. Town of Fairfield,* 811 F.2d 782, 784 (2d Cir.1987), we affirm the judgment of the district court granting the School District's Fed.R.Civ.P. 12(b)(6) motion and ordering dismissal of the Tuckers' complaint.