950 F.2d 156
 60 USLW 2400, 71 Ed. Law Rep. 633
 Shannon CARTER, a minor By and Through her father, and next
friend, Emory D. CARTER, Plaintiff-Appellee,
v.
FLORENCE COUNTY SCHOOL DISTRICT FOUR, Ernest K. Nicholson,
Superintendent, in his official capacity, School Board
Members, Bennie Anderson, Chairman, Monroe Friday, Jack
Odom, Elrita Bacote, T.R. Green, James W. Hicks, in their
official capacity, Defendants-Appellants.
 No. 91-1047.
 United States Court of Appeals,
Fourth Circuit.
 Argued Sept. 30, 1991.
Decided Nov. 26, 1991.
 
 Bruce Edward Davis, Camden, S.C., argued, for defendants-appellants.
 Peter W.D. Wright, Richmond, Va., argued (David R. Burlington, South Carolina Protection and Advocacy System for the Handicapped, Inc., Greenville, S.C., on brief), for plaintiff-appellee.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, WILKINSON, Circuit Judge, and MICHAEL, District Judge for the Western District of Virginia, sitting by designation.
 OPINION
 WILKINSON, Circuit Judge:
 
 
 1
 The Individuals with Disabilities Education Act (formerly the Education of the Handicapped Act), 20 U.S.C. § 1400 et seq., requires states that receive federal funds for education of the handicapped to provide such children with a "free appropriate public education." 20 U.S.C. § 1412(1) (1988). In Burlington School Committee v. Massachusetts Department of Education, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985), the Supreme Court held that parents who believe that the education offered by the public schools is inappropriate may unilaterally place their child in a private school and are entitled to reimbursement from the state for tuition and expenses if it is subsequently determined that the public school system failed to comply with its statutory duties and that the private school provided an appropriate education. The question in this case is whether reimbursement under the Act is barred when parents have enrolled their disabled child in a private school that has not been approved by the state for the child's placement under the Act. We hold that placement in a private school not approved by the state is not a bar to reimbursement under the Act and therefore affirm the judgment of the district court ordering reimbursement.
 
 I.
 
 2
 This case involves the education of Shannon Carter, who is now twenty-two years old. Shannon attended the first grade at Timmonsville Elementary School of Florence County School District Four, in which she resided with her parents. Shannon attended a nearby private school, the Roy Hudgens Academy, through grade six. She re-entered the public school system for the seventh grade during the 1982-83 school year.
 
 
 3
 Shannon performed poorly in school during the seventh grade. As a result, the school system tested her twice in early 1983 for potential learning disabilities. It concluded that, although Shannon scored slightly below average in achievement, she was not learning disabled. After Shannon performed badly during the first semester of the ninth grade, her parents prompted the school district to conduct additional testing in April 1985. Based on this testing, the school psychologist concluded that Shannon was indeed learning disabled under the criteria set forth by the South Carolina State Department of Education (SDE). Although the disability went unnoticed by the school district for almost three years, the district court found that it was comparatively severe.
 
 
 4
 Following the April 1985 evaluation, the school district proposed an individualized educational program (IEP) for Shannon at a meeting on May 1, 1985.[1] Under the school district's proposal, Shannon would have remained in regular classes but would have spent at least two periods per day in the resource room. Shannon's parents objected to the proposed resource room placement, believing that it would be inappropriate to place Shannon alongside students with emotional illnesses and mental retardation. Instead her parents requested a learning disabilities itinerant program in which Shannon would receive individualized attention from a special education teacher. The adopted IEP, which became effective May 2, 1985, and was to run through June 1986, placed Shannon in an itinerant program for three periods per week of individualized instruction, with the remainder of the week in regular classes. The IEP also contained specific goals for Shannon's educational progress. It set a goal of four months of reading progress during the school year, from a level of 5.4 (i.e., fifth grade, fourth month) to one of 5.8. The mathematics goal also posited four months' progress, from a 6.4 level to a 6.8 level. The IEP was implemented for the month remaining in the 1984-85 school year.
 
 
 5
 Dissatisfied with the IEP, Shannon's parents requested a due process hearing to challenge the appropriateness of the school district's educational program. See 20 U.S.C. § 1415(b)(2) (1988); 34 C.F.R. § 300.506(a) (1991). Both the local education agency hearing officer and the state education agency hearing officer rejected the arguments of Shannon's parents and concluded that the IEP provided Shannon with a free appropriate public education.
 
 
 6
 Because of their dissatisfaction with the school district's IEP, Shannon's parents placed her for the 1985-86 school year at the Trident Academy, in Mt. Pleasant, South Carolina, where she remained until graduation in 1988. Trident is a private school that enrolls only children with learning disabilities and specializes in the education of those whose learning disabilities are severe. Although Trident is accredited by the Southern Association of Colleges and Schools, approval of Shannon's placement at Trident had never been sought from the State Department of Education. On previous occasions, however, Trident's enrollment included students sent there by public schools under the aegis of the Act, including three who were placed there by South Carolina public schools. There is no evidence that Trident Academy had ever been disapproved for placements under the Act by the SDE.
 
 
 7
 In July 1986, Shannon's parents filed suit on her behalf in the United States District Court for the District of South Carolina. The complaint alleged that the school district breached its statutory duty to provide Shannon a free appropriate public education and sought actual damages and "retroactive reimbursement for tuition costs so far incurred." After a bench trial, the district court found for Shannon. Although concluding that the school district had not breached the procedural requirements of the Act, it held that the school district violated the Act's substantive provisions by failing to provide Shannon with a free appropriate public education. The court concluded that the IEP's goals of a mere four months' progress in mathematics and reading allowed Shannon to "continue to fall behind her classmates at an alarming rate" and therefore "ensured the program's inadequacy from its inception." The district court also found itinerant study of only three periods per week inadequate to "allow her to receive passing marks and advance from grade to grade."
 
 
 8
 Turning to the question of reimbursement, the district court held that "Trident Academy provided Shannon an excellent education in substantial compliance with all the substantive requirements of the [Act]." The court relied on the testimony of a court-appointed expert who tested Shannon and concluded that she made significant progress at Trident. For example, Shannon's reading comprehension advanced from a level of 4.7 in 1985 to 7.8 in 1988--more than three years' progress over three school years. Moreover, the court concluded that "[n]othing in the existing law or regulations" barred reimbursement simply because the State Department of Education had not approved Shannon's placement by her parents at the Trident Academy. Thus, the district court ordered the school district to reimburse Shannon for tuition and fees, room and board, mileage to school, and four trips home per year for each of her three years at Trident, which totalled $35,716.11 plus prejudgment interest.
 
 
 9
 The school district has appealed.
 
 II.
 
 10
 The school district first challenges the district court's conclusion that it failed to provide Shannon a free appropriate public education. In order to satisfy the Act's requirement that the state provide a free appropriate public education, the IEP must be "reasonably calculated to enable the child to receive educational benefits." Board of Educ. v. Rowley, 458 U.S. 176, 207, 102 S.Ct. 3034, 3051, 73 L.Ed.2d 690 (1982). In particular, "[w]hen the handicapped child is being educated in the regular classrooms of a public school system"--as Shannon was here--"the achievement of passing marks and advancement from grade to grade will be one important factor in determining educational benefit." Id. at 207 n. 28, 102 S.Ct. at 3051 n. 28. And as this court has noted, "[c]learly, Congress did not intend that a school system could discharge its duty under the [Act] by providing a program that produces some minimal academic advancement, no matter how trivial." Hall ex rel. Hall v. Vance County Bd. of Educ., 774 F.2d 629, 636 (4th Cir.1985). See also Board of Educ. v. Diamond, 808 F.2d 987, 991 (3d Cir.1986).
 
 
 11
 In light of these principles, we cannot say that the district court's conclusion was clearly erroneous. The school district drafted the IEP to apply to a learning disabled tenth-grade student whose reading and mathematics skills were at a fifth and sixth grade level, respectively. Although the amount of appropriate advancement will necessarily vary depending on the abilities of individual students, see In re Conklin, 946 F.2d 306, 315-16 (4th Cir.1991), the district court did not err in finding that a goal of four months' progress over a period of more than one year was rather modest for a student such as Shannon and was unlikely to permit her to advance from grade to grade with passing marks. Thus, it was proper for the district court to conclude that the itinerant program failed to satisfy the Act's requirement of more than minimal or trivial progress.
 
 
 12
 The school district suggests that the Act's preference for "mainstreaming" handicapped students, see 20 U.S.C.A. § 1412(5)(B) (West Supp.1991); 34 C.F.R. §§ 300.550-300.556 (1991), justifies its IEP and makes the public school placement superior to Trident, which educates only children with disabilities. The Act's mainstreaming policy, however, is of no avail to the school district here. Under the Act, mainstreaming is a policy to be pursued so long as it is consistent with the Act's primary goal of providing disabled students with an appropriate education. Where necessary for educational reasons, mainstreaming assumes a subordinate role in formulating an educational program. See Rowley, 458 U.S. at 181 & n. 4, 102 S.Ct. at 3038 & n. 4; Daniel R.R. v. State Bd. of Educ., 874 F.2d 1036, 1044-45 (5th Cir.1989). In any event, the Act's preference for mainstreaming was aimed at preventing schools from segregating handicapped students from the general student body, see Burlington, 471 U.S. at 373, 105 S.Ct. at 2004; H.R.Rep. No. 332, 94th Cong., 1st Sess. 2 (1975); the school district has presented no evidence that the policy was meant to restrict parental options when the public schools fail to comply with the requirements of the Act.
 
 
 13
 Likewise, that Shannon's parents rejected the school district's proposed resource room placement in favor of the less intensive itinerant program does not relieve the school district of liability here. There was no finding by the district court that the alternative rejected by Shannon's parents would have provided an appropriate education. In the absence of such a finding, it is conceivable that the resource room placement would have been less appropriate than the IEP upon which the parties eventually settled. Thus, the case in which parents reject a plainly appropriate IEP is simply not before us.
 
 III.
 
 14
 The school district next argues that the Act does not permit reimbursement when parents unilaterally withdraw their child from the public school system and enroll him or her in a private school that has not been approved by the state for the child's placement under the Act. For the reasons explained below, we must reject this contention.[2]
 
 A.
 
 15
 We begin with a brief review of the law governing reimbursement for private school education under the Individuals with Disabilities Education Act. The Act itself does not explicitly authorize the reimbursement of parents for expenses incurred when they unilaterally place their child in a private school out of a belief that the education offered by the public schools is not "appropriate." The Act's language does, however, direct a court to "grant such relief as [it] determines is appropriate." 20 U.S.C. § 1415(e)(2) (1988). In Burlington School Committee v. Massachusetts Department of Education, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985), the Supreme Court held that Congress intended this remedial provision to authorize a court to order reimbursement when the court concludes both that the public school system failed to provide a free appropriate public education and that the private school chosen by the parents did provide an appropriate education to the child. See id. at 369-70, 105 S.Ct. at 2002-03. Because administrative and judicial review of a school system's program under the Act is "ponderous," parents who believe that the public schools are not offering their child an appropriate education are faced with a choice:
 
 
 16
 [G]o along with the IEP to the detriment of their child if it turns out to be inappropriate or pay for what they consider to be the appropriate placement. If they choose the latter course, ... it would be an empty victory to have a court tell them several years later that they were right but that these expenditures could not ... be reimbursed by the school officials.
 
 
 17
 Id. at 370, 105 S.Ct. at 2003. Such a result, according to the Court, would leave "the child's right to a free appropriate public education ... less than complete." Id. (emphasis in the original).
 
 B.
 
 18
 In Burlington, the state's department of education had approved the parents' private school placement. See id. at 363, 105 S.Ct. at 1999. Here, by contrast, neither Shannon's parents nor the school district sought state approval for Shannon's placement at Trident, and therefore such state approval was never given. The school district argues that the latter fact by itself bars reimbursement under the Act. Moreover, the school district suggests that a placement at Trident would not have been approved even had an application been presented to the SDE. First, although its educational program in many ways parallels what is required under the Act, Trident does not attempt to comply with the terms of the Act. Trident does not, for example, develop educational plans called IEPs, though it does set goals for students and revise them four times per school year. Second, at the time of trial there were at least two faculty members at Trident--including one of Shannon's teachers--who were not certified by the state. Under state law, these teachers are prohibited from teaching in a South Carolina public school. See S.C.Code §§ 59-21-550, 59-25-20 (1990); S.C.Code Regs. 43-205 (1982).
 
 
 19
 We do not think that these facts are fatal to the request for reimbursement. In suggesting that reimbursement is proper only when parents place their child in a private school approved by the state, the school district misreads the statute. The pertinent provision of the Act requires that states:
 
 
 20
 [S]et forth policies and procedures to assure ... that--
 
 
 21
 (i) children with disabilities in private schools and facilities will be provided special education and related services (in conformance with an individualized education program as required by this subchapter) at no cost to their parents or guardian, if such children are placed in or referred to such schools or facilities by the State or appropriate local educational agency as the means of carrying out the requirements of this subchapter or any other applicable law requiring the provision of special education and related services to all children with disabilities within such State; and
 
 
 22
 (ii) in all such instances, the State educational agency shall determine whether such schools and facilities meet standards that apply to State and local educational agencies and that children so served have all the rights they would have if served by such agencies....
 
 
 23
 20 U.S.C.A. § 1413(a)(4)(B) (West 1990 & Supp.1991) (emphasis added).
 
 
 24
 As indicated by the italicized passages, Congress clearly envisioned that § 1413(a)(4)(B), and its requirement that private schools receiving funds under the Act meet state educational standards, would apply only when the child is placed in the private school by the state or local school system. The Act itself simply imposes no requirement that the private school be approved by the state in parent-placement reimbursement cases. There is no indication to the contrary in the Act's legislative history, see, e.g., S.Rep. No. 168, 94th Cong., 1st Sess. 32, 50, reprinted in 1975 U.S.Code Cong. & Admin.News 1425, 1456, 1473, and federal regulations and South Carolina law similarly apply state educational standards to private schools only when the child is placed there by the state or the school district. See 34 C.F.R. §§ 300.400-300.403 (1991) (state educational standards apply to "a handicapped child who is placed in or referred to a private school or facility by a public agency"); id. § 300.347 (state responsibility for IEPs when "a public agency places a handicapped child in, or refers a child to, a private school or facility"); S.C.Code § 59-33-50 (1990) ("When a school district cannot ... provid[e] for the education of its resident handicapped children because of insufficient numbers, the district may contract with other districts within the State or school systems or public or private institutions or agencies within or without the State which maintain approved special education facilities...."); S.C.Code Regs. 43-243(E)(7) (1982) ("Whenever handicapped children are placed in private schools by the SEA/LEA [state or local educational agency], such private schools must be in compliance with the standards of the SEA/LEA.").
 
 
 25
 We agree with the district court that Schimmel ex rel. Schimmel v. Spillane, 819 F.2d 477 (4th Cir.1987), on which the school district relies, is not to the contrary. In Schimmel, the parents never demonstrated that the private school placement proposed by the state would not have offered an appropriate education; thus, the state placement provided the child everything to which he was entitled under the Act and the parents' claim for reimbursement for an out-of-state private placement was properly denied. See Goodall ex rel. Goodall v. Stafford County Sch. Bd., 930 F.2d 363, 367-69 (4th Cir.1991); Hessler ex rel. Britt v. State Bd. of Educ., 700 F.2d 134, 139 (4th Cir.1983). Here, by contrast, the district court held that the placement proposed by the state was not appropriate. Although the Schimmel court did note that "[t]he statute simply does not permit school systems to place and fund handicapped children in unapproved private schools," 819 F.2d at 484 (emphasis added), this language states only the unremarkable proposition that the public schools may not place a child in a private school that has not been approved by the state. See, e.g., Antkowiak ex rel. Antkowiak v. Ambach, 838 F.2d 635, 639-40 (2d Cir.1988). Schimmel did not present the situation where, as here, the placement offered by the public schools is inappropriate under the Act and the parents are forced by the school system's violation of the Act to unilaterally withdraw the child from the public schools and, on their own, seek alternative schooling.[3]
 
 
 26
 We recognize that courts have differed on the question presented here. Several courts have allowed reimbursement despite the absence of state approval of the private school chosen by the parents. See Alamo Heights Indep. Sch. Dist. v. State Bd. of Educ., 790 F.2d 1153, 1160-61 (5th Cir.1986); Carrington v. Commissioner of Educ., 404 Mass. 290, 294-96, 535 N.E.2d 212, 215-16 (1989). By contrast, in Tucker v. Bay Shore Union Free School District, 873 F.2d 563 (2d Cir.1989), the Second Circuit concluded that parents may not obtain reimbursement for unilateral placements in unapproved private schools. The court based its reasoning on the Supreme Court's statement in Burlington that reimbursement is appropriate only "if the court ultimately determines that such placement, rather than a proposed IEP, is proper under the Act." 471 U.S. at 369, 105 S.Ct. at 2002. Because the Act defines the term "free appropriate public education" to mean, inter alia, "special education and related services that ... meet the standards of the State educational agency," 20 U.S.C. § 1401(a)(18)(B) (1988), the Tucker court concluded that a private school placement cannot be "proper under the Act," even if made by parents rather than public school officials, when the private school in question does not "meet the standards of the State educational agency." Tucker, 873 F.2d at 568.
 
 
 27
 We must respectfully decline to follow the Tucker decision. First, in relying on a general definition for its holding, Tucker did not address the specific language in 20 U.S.C. § 1413(a)(4)(B)(ii), which by its terms applies state educational standards only when a child is placed in a private school by public school officials. That language was intended by Congress to protect the interests of handicapped children placed in private schools by the state. Had Congress intended to take the very different step of limiting the appropriate relief due handicapped children when their parents choose a private school, there would have been no reason for Congress to have limited § 1413(a)(4)(B)(ii) by its terms to placements by the state. The Tucker court, by focusing only on a general definition, thus appears to have created a significant and unwarranted restriction upon the ability of otherwise eligible children to seek relief.
 
 
 28
 Second, we do not believe that the Supreme Court, by requiring that the private school placement be "proper under the Act," intended to impose on private schools chosen by parents the whole panoply of duties that the Act imposes on the state. Rather, when a public school system has defaulted on its obligations under the Act, a private school placement is "proper under the Act" if the education provided by the private school is "reasonably calculated to enable the child to receive educational benefits," Rowley, 458 U.S. at 207, 102 S.Ct. at 3051--the same standard by which the appropriateness of a public school's IEP is assessed. See Tice ex rel. Tice v. Botetourt County Sch. Bd., 908 F.2d 1200, 1208 (4th Cir.1990) (standard is whether private placement "was proper to meet the Act's educational goals").
 
 
 29
 In sum, we do not believe that the Act as written forbids reimbursement when parents place their child in a private school that has not been approved by the state, and we join those courts that have so held. As interpreted by Burlington, the Act imposes only two prerequisites to reimbursement: that the program proposed by the state failed to provide the child a free appropriate public education, and that the private school in which the child is enrolled succeeded in providing an appropriate education, i.e., an education that is reasonably calculated to enable the child to receive educational benefits.
 
 C.
 
 30
 Conditioning reimbursement under Burlington on state approval of the private school would undermine the values and policies the Act was enacted to further. "The Act represents an ambitious federal effort to promote the education of handicapped children...." Rowley, 458 U.S. at 179, 102 S.Ct. at 3037. Congress sought to promote this goal by conditioning the receipt of federal funds on the implementation of state programs designed to ensure that disabled children are provided with educational opportunities, including special education and related services, that are tailored specifically to meet their unique needs. See 20 U.S.C.A. § 1400(c) (West Supp.1991). Because Congress intended that the Act "result in maximum benefits to handicapped children and their families," S.Rep. No. 168, 94th Cong., 1st Sess. 6, reprinted in 1975 U.S.Code Cong. & Admin.News 1425, 1430, the Act's remedial provision--which authorizes the district court to "grant such relief as [it] determines is appropriate," 20 U.S.C. § 1415(e)(2) (1988)--is "a broad grant of equitable power designed to provide courts maximum flexibility in effectuating the statutory objectives." Doe v. Brookline Sch. Comm., 722 F.2d 910, 919 (1st Cir.1983).
 
 
 31
 The Act envisions, of course, that the primary providers of educational opportunities for handicapped children will be the public schools. When those schools fail to meet their responsibilities, however, parents may be left to their own devices in finding a school that provides the specialized educational environment necessary to educate their children. In such circumstances, it hardly seems consistent with the Act's goals to forbid parents from educating their child at a school that provides an appropriate education simply because that school lacks the stamp of approval of the same public school system that failed to meet the child's needs in the first place.
 
 
 32
 Finally, it must be emphasized that parents who unilaterally place their child in an unapproved private school bear substantial risks--risks that function to ensure that our decision will not be a means through which parents can subvert the Act's emphasis on public education. If the court finds that the public schools did in fact provide a free appropriate public education, the parents cannot receive reimbursement, whether or not the private school in question is state approved. See, e.g., Goodall, 930 F.2d at 367-69. Further, reimbursement is barred if the court finds that the private school chosen by the parents failed to provide an appropriate education. See, e.g., Tice, 908 F.2d at 1207-08 & n. 11. It may be that the possibility of the latter is enhanced when the private school in which the child is enrolled is not approved by the state. In the absence of a statutory command that the choice of an unapproved private school is not the parents' to make, however, that risk is simply one factor that the parents must consider in deciding where to educate their child.
 
 IV.
 
 33
 We in no way disparage the process through which states impose standards upon public schools and certify teachers as qualified to teach in particular subject areas. Such state regulatory mechanisms play a positive and important role in ensuring educational quality. Thus, when parents unilaterally place their child in a private school that has not been approved by the state, they invariably bear some risk that the school will fail to provide an adequate education. Nonetheless, we simply cannot convert state approval of a parent's private school placement of a handicapped child into a condition for reimbursement under Burlington when that private school meets the needs of the child in the manner contemplated by the Act and when the state has defaulted on its statutory obligations.
 
 
 34
 The judgment of the district court is hereby
 
 
 35
 AFFIRMED.
 
 
 
 [1]
 An IEP is a plan jointly developed by school officials and parents that contains, inter alia, an evaluation of the current levels of educational performance of the student, annual goals for educational advancement, a statement of the specific educational services that the school will provide the student, and objective criteria and evaluation procedures by which to measure whether the annual objectives are being achieved. See 20 U.S.C.A. § 1401(20) (West Supp.1991). The IEP is "the centerpiece of the statute's education delivery system for disabled children." Honig v. Doe, 484 U.S. 305, 311, 108 S.Ct. 592, 598, 98 L.Ed.2d 686 (1988). The Act requires that a school establish an IEP for each disabled child and review it at least annually. See 20 U.S.C.A. § 1414(a)(5) (West Supp.1991)
 
 
 [2]
 The school district does not dispute the district court's conclusion that Trident Academy provided Shannon with an appropriate education, which is a prerequisite to reimbursement under Burlington. See 471 U.S. at 370, 105 S.Ct. at 2003. Nor does the school district challenge the amount of reimbursement ordered by the district court
 
 
 [3]
 For similar reasons, we find In re Conklin, supra, to be inapposite. In Conklin, the district court held that the educational program offered by the state, through the State Board of Education hearing review panel, provided a free appropriate public education under the Act--and, indeed, offered more than the Act required. See id. at 311-12, 314-15. Thus, as in Schimmel, the state satisfied its statutory obligations and the claim for reimbursement was therefore properly denied. Although in Conklin there is language that would decline to hold a state accountable for an unapproved private placement, see id. at 311 n. 5, the court simply was not presented with, and did not purport to address, the statutory and precedential arguments that arise when a district court finds both that the state has defaulted on its obligations under the Act and that the private school chosen by the parents provides an appropriate education